CHARLES BRAS *et al.* v. M. M. SHEFFIELD.

LEASE—*Option to Purchase Land at Expiration.*   Where the owner of land leases it for a period of five years at a stipulated annual rental, and the contract of lease contains a stipulation that the renters shall have the right, at the expiration of the lease, to purchase the premises, if they shall so elect, at a fixed price, there is no completed sale, nor do the renters acquire any estate in the land beyond the leasehold interest until they have elected to accept the offer and have paid or tendered the purchase-price stipulated in the contract.

*Error from Marshall District Court.*

THIS proceeding was brought by *M. M. Sheffield*, to ascertain the interest of the plaintiffs in error and others in a

tract of land in Marshall county, and subject the interest of Alexander Bras to the alleged liens of certain judgments which had been awarded against him. At the trial, the court stated separately, in writing, its conclusions of fact and law, as follows:

"CONCLUSIONS OF FACT.

"1. On the 5th day of February, 1883, the defendant H. L. Sage was the owner of the premises described in the petition, to wit, southeast quarter of section 15, township 3, range 7, in Marshall county, Kansas; and on that day he made a written contract with the defendants Alex. Bras and Charles Bras, by the terms of which he leased said premises to them for the term of five years from that date; and it was therein agreed, among other things, that they should pay him $144 at the expiration of each year, and should pay all taxes levied on said land, as rent therefor; and that the said Alexander Bras and Charles Bras should have the right to purchase said premises if they should so elect, at the stipulated sum of $1,200, at the expiration of the lease. Alex. Bras and Charles Bras took actual possession of said land immediately after the date of said contract, and Charles Bras has occupied the land as his home, with his family, continuously ever since.

"2. The defendant, Alex. Bras, was a single man prior to the commencement of this action, and made his home with the defendant, Charles Bras, who was a younger brother of said Alexander, and had a family consisting of his wife and six children; and during the years 1883, 1884 and 1885 they each cultivated one-half of the land, and each paid in proportion to the amount he cultivated in making up the annual payments for those three years, as required by the contract with Sage. At the time of taking possession of the land, there were 63 acres in cultivation, a small building of one room, 12 by 14 feet, and a Kansas stable, on the land; and during the first year they made some addition to the house, the cost of lumber and nails therefor amounting to about $70, each paying about half the expenses thereof. They also together broke and put in cultivation about 65 acres more of the land, and made other improvements. After the year 1885, Charles Bras made all the payments required by the contract, being the annual payments for the years 1886 and 1887, and occupied the land by himself.

"3. On November 19, 1886, the defendant Charles Bras took the original contract to H. L. Sage, and, with the consent of Alex. Bras, had a new contract issued to himself alone, dating it back to the date of the original contract with Sage, and having indorsed thereon the same indorsements that were on the original contract at that time, so that it differed from the original contract only in omitting the name of Alex. Bras. The said contract from H. L. Sage to Charles Bras is in words and figures as set forth in the separate answer of H. L. Sage in this action, which is as follows:

'KNOW ALL MEN BY THESE PRESENTS, That I, Horace L. Sage, of the county of Marshall and state of Kansas, for and in consideration of the covenants of Charles Bras hereinafter set forth, do by these presents lease unto the said Charles Bras, of the county of Marshall and state of Kansas, the following described property, to wit: Southeast quarter of section 15, township 3 south, of range 7 east; to have and to hold the same for a period of five years from this date, February 5, 1883: *Provided*, Said lessee shall pay the rental for said premises as hereinafter set forth at the time when the said payments become due; and keep the property fully insured against losses by fire, wind, and lightning; and the said Charles Bras agrees to pay the said Horace L. Sage $144 annually at the expiration of each year, and to pay all taxes which may be levied on said lands when the same become due, as rent. The said Charles Bras further covenants with the said Horace L. Sage, that at the expiration of the time mentioned in this lease peaceable possession shall be given to said lessor, in as good condition as they now are, the usual wear excepted; and that upon the nonpayment of the whole or any portion to be paid, the said lessor may at his election either distrain said rent due, or declare this lease at an end, and recover possession as if the same was held by forcible detainer, the said lessee hereby waiving any notice of such election or any demand for the possession of said premises. And it is further covenanted and agreed by the said parties, that the said Charles Bras shall have the right to purchase said premises if he so elect at the stipulated sum of $1,200, at the expiration of this lease; and the said lessor elects to purchase, as above set forth, to make a good and sufficient title, warranting to said purchaser said premises, except taxes and tax titles. The covenants herein shall extend to and be binding upon the heirs, executors and administrators of the parties to this lease. Witness the hands and seals of the parties aforesaid, this fifth day of February, 1883.

HORACE L. SAGE,
CHARLES E. BRAS.'

"4. On December 19, 1885, the defendant Alex. Bras took a contract to construct a section of railroad in Marshall county, near said land. Said contract was completed in September, 1886, and in the same month said Alex. Bras was insolvent, and unable to pay his debts, and was being pressed by his creditors, including the plaintiff and defendant Gatchell, for the payment of their claims. Suits were commenced in that month by said Sheffield and said Gatchell against

Alex. Bras and others for debts incurred by him in carrying on his railroad work. On January 13, 1887, said Sheffield and Gatchell each had attachments issued in their said suits, and levied upon the interest of Alex. Bras in said land. On August 10, 1887, judgments were rendered in said actions by the district court of Marshall county, Kansas, against Alex. Bras in favor of M. M. Sheffield, for $821.02, and in favor of J. B. Gatchell, for $349.62, together with the costs in each of said actions. There is no property of the defendant Alexander Bras out of which to collect the amount of said judgments, or any part thereof, except interest of said defendant in said land; and said judgments remain wholly unsatisfied.

"5. By agreement of H. L. Sage, the amount of annual payment to be made on said contract has been reduced to $120 per year, and the payment due February 5, 1888, was made by Charles Bras at that date."

"CONCLUSIONS OF LAW.

"1. The legal title to the southeast quarter of section 15, in township 3, of range 7, in Marshall county, Kansas, is in the defendant H. L. Sage, in trust; and the defendants Charles Bras and Alex. Bras have an equitable interest in said land as tenants in common, and ,are entitled to the full legal and equitable title to said premises upon payment or tender to said H. L. Sage of the sum of $1,200, and rent of said premises from February 5, 1888, to the time of payment or tender, at the rate of $120 per year.

"2. The said judgments of said M. M. Sheffield and J. B. Gatchell are valid concurrent first liens on the interest of the said Alex. Bras in said premises, for the amounts thereof, with interest and costs."

The judgment of the court followed the conclusions of law. A motion for a new trial was made and overruled, and Charles Bras and Nancy E. Bras excepted to the rulings and judgment, and bring the case here for review.

*W. A. Calderhead,* for plaintiffs in error:

The most serious contention in this case is over the meaning and effect of the contract. The plaintiff below alleged this to be an agreement on the part of Sage to convey to

45— 49 KAS.

Alex. Bras and Charles Bras in undivided equal interests as tenants in common; and the trial court, adopting this idea, treats this contract as a bond for a deed, and finds in the first conclusion of law that by it Alex. Bras and Charles Bras had the whole equitable estate in the land from the date of the contract. The plaintiffs in error say that it is a lease with an option to purchase at a stipulated price, but with no obligation on the lessees to purchase; that it was a leasehold estate, in which Alex. Bras had no interest at the time of the attachment on which this action is founded. But this action by these creditors is founded on a supposed attachment of his alleged interest in the land, and the attachment issued in January, 1887, two months after he had completely surrendered all his interest. These creditors could only obtain such interest as he had in the land at the time of the attachment. What interest did he have? The court says he was insolvent in September, 1886, and he was sued on these debts in October, 1886. If he was insolvent then, there is no evidence of it in the record. And there is no evidence that either Charles Bras or Sage knew it; for until after trial and judgment, in August, 1887, on those suits, no one knew whether he was liable or not, or whether the other defendants sued with him were liable for those debts.

It is not shown by any evidence that any credit was given him on the strength of any interest in the land. He continued business at various places and was paying his other debts in full. He was not in possession of the land in any manner. He had no interest in the land at the time of the attachment. Certainly there is no contract of sale in the contract, and there is none in the understanding of the parties. There is an option to purchase there, but it is a "unilateral engagement gratuitously made." The essential element of a sale, the "mutual consent," is wanting, to make a contract of sale complete. There is no contract of sale for which Sage can ask a specific performance, nor is he liable to them for any breach of contract of sale. He might by retraction of his option become liable for a breach of contract to leave his offer open for

acceptance, but creditors cannot attach a probability of a claim for damages. Teid. Sales, § 41.

But if by this contract a greater estate than a leasehold was created and in existence, it was a joint estate; *i. e.*, one entire estate, in which each would have an undivided interest of the whole and not the whole of any undivided interest. They never became tenants in common, because the rescission as to Alex.'s part was either void *in toto*, or severance of possession was also a severance of all interest, in consideration of Charles remaining in possession, assuming the existing and accruing liability for rent, and that consideration was actually fulfilled. "It would take the affirmative action of both to incumber the same or any interest therein." *Baker v. Stewart*, 40 Kas. 442; *Shim v. Shim*, 21 Pac. Rep. 814. But whether leasehold estate or greater estate whatever it was, it was the homestead of Charles Bras and his family, and exempt, and to invade it in the manner this decree does is in effect to obliterate that right to satisfy creditors of Alex. Bras.

*Chas. Brown*, for defendants in error:

Did Alex. Bras have any interest of an equitable nature in the land in controversy at the time he obtained the credit of and created the debts to plaintiffs Sheffield and Gatchell? We contend that the evidence shows conclusively that the primary object of Alex. and Chas. Bras in going to Sage in the first instance, was to make a contract for the purchase of the land, and that the primary object of the contract was to provide for the sale of the land; that putting the same in the form of a lease, fixing the rent at 12 per cent. interest on the purchase price, and the payment of taxes in addition thereto, was only to conform to Sage's custom in making sale contracts.

Upon the theory of plaintiff in error, the contract was only a lease with an option given the grantees to purchase at the end of five years upon the payment of the sum of $1,200. In *Hawralty v. Warren*, 90 Am. Dec. 613, decided by the supreme court of New Jersey, the facts were very similar to the

facts in the case at bar. In rendering its opinion in that case, the supreme court of New Jersey says:

"It is now well settled that an optional agreement to convey, or renew a lease, without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity, if it is made upon proper consideration, or forms part of a lease or other contract between the parties that may be the true consideration for it."

There can be no question that, according to all modern decisions, the equitable title to the land in controversy passed from defendant Sage to defendants Alex. Bras and Charles Bras by the contract on February 5, 1883. See 3 Am. Dec. 530, and 96 id. 582. And that from that time defendant Sage has been holding the legal title in trust for Alex. and Chas. Bras, and their heirs and assigns, subject to his lien for the stipulated sum of $1,200.

Did Alex. Bras divest himself of his interest in the land? And if so, did he do so in such a manner as will defeat Sheffield and Gatchell in subjecting it to the payment of their claims? He could not dispose of his interest except by an instrument in writing signed by himself or by his agent lawfully authorized by writing. See statute of frauds. What instrument did Alex. Bras ever sign conveying his interest in the land in controversy? It is not even claimed that he signed any. The weight of authorities, in my opinion, deny the existence of the homestead right in all cases where lands are held in undivided interests. But it seems that this court has not gone to that extent, being content to limit the right so that it may not interfere with the rights of a cotenant or those holding under him. See *Tarrant v. Swain,* 15 Kas. 146. In that case this court says, in these words:

"Of course a tenant in common can obtain no such homestead interest as will interfere with the rights or interests of his cotenant or any person rightfully holding under his cotenant."

This decision entirely disposes of the homestead question raised by counsel. If Alex. Bras was a cotenant of Charles

Bras, and Charles and his family had no right that could interfere with the rights and interests of Alex., then they have none that will interfere to prevent a sale of the rights and interest of Alex. Bras.

The opinion of the court was delivered by

JOHNSTON, J.: The result of this proceeding depends upon the proper construction of the contract of lease made February 5, 1883, between the owner of the land, H. L. Sage, and Alexander Bras and Charles Bras.

The Bras brothers entered into the possession of the land under the lease, and together cultivated and operated it for about two years. After that time Alexander left the farm and engaged in another occupation, and did not subsequently contribute anything toward either rent or taxes. He seems to have abandoned the land and the lease, and left his brother Charles to carry on the farm and carry out the contract. In the month of September, 1886, a new contract was made between Sage and Charles Bras, with the consent of Alexander, which was the same in every respect as the first, except that it omitted the name of Alexander Bras and made Charles the sole lessee, and the only one who could exercise the option to purchase the land at the expiration of the lease. At that time, Sage made an agreement, which was indorsed on the back of the lease, that if the rent was paid when it became due he would reduce it to $120 per year, the lessee to pay the taxes.

If the contract originally made cannot be considered as a sale and transfer of the land, then Alexander Bras acquired no equitable title therein, and no part of the same can be subjected to the payment of the judgments against him. An inspection of its terms shows that it is an ordinary lease for a period of five years, at the annual rental of $144 and the taxes that may be levied against it. It was expressly stated that the taxes were to be paid as rent, and it was also provided that the renters should surrender the possession of the premises at the end of the term in as good condition, usual wear excepted, as

they were in when the lease was made; and that upon the non-payment of any rent when due the owner might declare the lease at an end or distrain the rent due, and notice of demand for the possession of the premises in such case was waived. At the end of the lease is the stipulation that the renters had the right at the expiration of the lease to purchase the premises at the price of $1,200, provided they elected to do so, and, in case they elected to purchase at that time, that the owner would make a good and sufficient title, warranting to such purchasers the premises, except taxes and tax titles.

It will be seen that the renters made no agreement to purchase the land at the end of the term, nor were they under any obligation to purchase at that time. There was no completed contract of sale upon which Sage could ask for specific performance, and the renters could have surrendered the premises at the end of the lease without violating the contract. All payments under the contract were to be paid as rent, and not as purchase-money. It is true that the owner of the land had offered and agreed that the renters might have the privilege of purchasing at the end of the five-year period; and this agreement was probably binding upon him; that is, he was bound that the offer should be open and available to the renters at the end of the rental period; but the unaccepted offer had no binding force upon them. They had an option to purchase, which they were at liberty to accept or not at the end of the lease, but the fact that they made a contract for an option did not constitute a sale nor vest in them any title or interest beyond what was acquired under the lease. Until they had elected to accept the offer made by Sage, and had paid or tendered the purchase-price stipulated in the contract, there was no sale or transfer of the title. (Tied. Sales, §§ 33, 41.)

The case of *Hawralty v. Warren*, 90 Am. Dec. 613, is relied upon, but is no authority on the turning point in this case. It was there held that an optional contract to convey land, made upon proper consideration, might be enforced; but there, the party to whom the option had been given had

elected to purchase, and had offered to pay the purchase price within the stipulated time. Here, Alexander Bras, against whom the judgment sought to be enforced was rendered, never at any time elected to purchase, but had abandoned the lease and the land, and left the country, long before the time to purchase had arrived. In fact, these proceedings were begun before the rental period had expired. Before the time when the parties were to avail themselves of the privilege of purchasing, the rights of Alexander Bras under the contract had terminated, and the owner had made a new contract with Charles Bras; but neither Alexander nor Charles Bras had elected to avail himself of the option before the commencement of this action, and Alexander Bras has never done so, and has no equitable title to the land in controversy.

The judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.