CAMERON v. SHUMWAY.

1. Vendor and Purchaser—Option—Construction.
    A writing executed by a landowner giving an option to pur-
    chase land on or before a certain date, and stating that when
    the balance of the purchase price "is paid a warranty deed of
    said property is to be given and an abstract to date of trans-
    fer furnished showing perfect title, also a tax history is to be
    furnished," only entitles the purchaser to a deed, abstract,
    and tax history on payment of the price within the time
    limited; and where the holder of the option neither accepts
    it in writing or tenders the price within the time limited his
    right is lost, although he demands the deed, etc., and states
    that payment will be made when satisfactory title is fur-
    nished.

2. Same—Option—What Constitutes.
    An option is a contract by which the owner agrees with an-
    other person that he shall have the privilege of buying his
    property at a fixed price within a limited time, and the other
    party acquires neither an interest in the land, nor a chose in
    action, prior to his election to purchase within the time
    limited.

Appeal from Ingham; Wisner, J., presiding.   Sub-
mitted June 14, 1907.   (Docket No. 38.)   Decided Octo-
ber 4, 1907.

Bill by Lowry Cameron against Frank W. Shumway
for the specific performance of an agreement for the sale
of certain land.   From a decree dismissing the bill, com-
plainant appeals.   Affirmed.

*L. B. Gardner*, for complainant.

*Rollin H. Person*, for defendant.

Moore, J.   This is a bill of complaint filed for the pur-
pose of obtaining specific performance of an agreement in
relation to the sale of lands.   The material prayer of the
bill is as follows:

"That said defendant may be decreed to make a good and sufficient deed of conveyance to your orator for the said described premises, your orator being ready and willing, and hereby expressly offering to perform the said agreement on his part, and to pay defendant the residue of the said purchase money upon the defendant's making out a good and sufficient title to the said premises and executing a proper conveyance thereof to your orator, and furnish an abstract and tax history and otherwise perform his part of said agreement pursuant to the terms of the said agreement."

In disposing of the case the trial judge filed a written opinion which states the questions involved. It is as follows:

"May 4, 1904, Mr. Frank W. Shumway was the owner of certain lots in the city of Lansing described in the pleadings in this case, and there was in the city of Lansing at that time a man by the name of Frank H. Hendrick who was engaged in the real estate business, a real estate broker. These two parties met at the Boat Club parlors, so-called, in the city of Lansing, on the 10th day of May, 1904, and had some conversation in respect to a sale of these lots that I have mentioned, and it resulted in the drawing by Mr. Hendrick of a certain option and the signing of the same by Mr. Shumway. It is testified by Mr. Shumway that at the time of this conversation he called Mr. Hendrick's attention to the fact that there were on these lands certain taxes levied for the construction of a sewer; that he had been advised were void and that any contract he might make in respect to a sale of those lots should be subject to his rights in substance to contest those taxes; that he did not propose to pay them; that they were unjust and illegal.

"Now that conversation, that part of it that I now call your attention to is denied by Mr. Hendrick, and he says that the entire agreement was embodied in this so-called option, which is as follows:

"'For and in consideration of $1.00 to me in hand paid, the receipt whereof is hereby acknowledged, I hereby give to Frank H. Hendrick, of Lansing, Mich., an option to July 1, 1904, to purchase of me for the sum of $2,500 the following described property (describing the property); also agree to furnish abstract of said property showing perfect title.

"'Dated, Lansing, Mich., May 10, 1904.'

"On the 15th day of the same month, Dr. Shumway was taken ill with pneumonia,  *  *  *  that his life was despaired of.   That during that illness and before the expiration of the time of that option Mr. Hendrick called at the house of Mr. Shumway, which was at Williamston, and endeavored to see the doctor in respect to procuring an extension of the option, but the doctor was so ill that the nurse in attendance and the wife of the doctor would not permit him to be seen, but finally on the 28th day of June he had so far recovered as to be able to sit up, although not yet able to be dressed and sit up for any considerable length of time, and on that day Mr. Hendrick again called at the house at Williamston to see Dr. Shumway.   The doctor testified that he was nervous, weak, during the course of the conversation, it was necessary that he should be attended medically and given an injection of some kind, and that Mr. Hendrick wanted to have the option extended until the 15th of November.   He would not consent to that, he would not extend it longer than September 1st.   Finally the date, November 15th, was changed in the instrument which was always prepared and brought there by Mr. Hendrick, changed to September 1st and finally the doctor signed it with the assurance on the part of Mr. Hendrick that nothing contained in it would in any way interfere with his right to contest those taxes; and also that it was merely a continuation of the original option.   He testifies that with that understanding he signed.   Now that is not denied by Mr. Hendrick.   But to go a little farther, it seems that on May 11th, the next day after Mr. Hendrick procured this original option from Dr. Shumway, he made the agreement with the complainant in this case to sell him that land for $3,000.   He then represented himself to be the agent of Dr. Shumway and gave to Mr. Cameron a receipt for $1,000, which Mr. Cameron then paid down, as follows:

" '$1,000.

" 'Received of Mr. Lowry Cameron the sum of one thousand dollars to apply on the purchase price, $3,000, of lot, etc. (describing the premises), the balance of the purchase price, $2,000, to be paid on or before November 1, 1904, with interest, warranty deed to be given upon the payment of balance of purchase price, $2,000, which is to be paid on or before November 1, 1904, abstract and tax history to be furnished when deed is given.'

"Then follows an erasure. The testimony does not show what originally appeared there, but there is a part of one line erased. 'Dated, Lansing, Mich., May 11, 1904. F. W. Shumway, per F. H. Hendrick.' The testimony shows that Mr. Hendrick had no more authority to act as the agent of Mr. Shumway in respect to that land than the court has at this moment. He deceived Mr. Cameron and he did not give the slightest intimation to Dr. Shumway that he had sold that land, did not disclose the situation at all to him at the time he procured this extension of that option June 28th.

"Now, in view of his conduct in respect to that transaction, he does not stand on an equal footing in respect to his testimony with Dr. Shumway at all, and I think that I must find as a matter of fact that Dr. Shumway has given the true version of the agreement between him and Hendrick in respect to this land, that he was to have the right to contest those taxes under the first option and under the last option. In addition to that I might say that I think no court of chancery on an attempt to enforce the specific performance of a contract of that kind, even in the absence of a specific agreement in respect to that, would compel the voluntary paying of taxes which in amount were nearly $33\frac{1}{2}$ per cent. of the value of the assessed value of the land, and if we add some more that accrued since that time, nearly 66 per cent. of the assessed value of the land, I think the sewer taxes, making about $400 as I remember the testimony, it would be, but be that as it may, under the contract, I am satisfied that Dr. Shumway was entitled to contest those taxes, and it appears to me, of course, this is outside of the case itself, because I am not passing upon it now, but I may say in passing that from the testimony in this case, I have no doubt but that those taxes were void.

"Now it is the contention of the complainant that Dr. Shumway is estopped from making any defense of the kind that he interposes by reason of his conduct. As I understand the doctrine of estoppel, in order to invoke it, the party against whom it is sought to use it must have done something which has led the other parties to do something on his part which has been to his disadvantage and by reason of which he will suffer loss. That is not the case here. Mr. Cameron paid his $1,000 before Dr. Shumway ever opened his mouth in regard to this transaction. As a matter of fact, since the doctor has written

these letters, since he has had these conversations, Mr. Cameron has gained the advantage in that Mr. Hendrick has returned to him $100 of the $1,000. He has benefited by what the doctor has done instead of having suffered a loss. Under the contract as I find it to exist—of course, complainant would not be entitled to a decree for specific performance. There are other reasons aside from the one I assign why he would not be entitled to it.

"The contract which was assigned to Mr. Cameron on November 28, 1904, provides that 'When said balance is paid (that is the $2,000) a warranty deed of said property is to be given.' In my judgment he would only be entitled to that deed after he had actually paid that money or actually tendered it on condition. I cannot find that the cases cited in respect to offender of that kind have application to this. This is a one-sided contract. It simply gives a man the right to make a purchase if he sees fit to do so. There is no way in the world that the grantor can force him to take that property. Therefore, there is no obligation upon the part of the grantor to make any tender of anything, because he can force nothing, he can accomplish nothing, but the duty devolves upon the other party to accept that contract. Counsel says suppose it had been a $100,000. Perhaps that might be unfortunate in some cases, but it is a contract. Suppose on the other hand the option had been to sell a $100,000 of negotiable bonds, was seller obliged to let the other man run away with them? I am certain it is not the contract. There is another reason in my judgment. Whatever may be said about the sufficiency or legality of that tender, the undisputed testimony shows that it was made late in December, and the testimony of Dr. Shumway shows about the first of January, confessedly about thirty days after the expiration of the time limited in this option, in my judgment it could not be enforced for that reason because the offer to perform and the acceptance of the terms of the option itself must be made within the life, within the time specified in the option. And for all those reasons in my judgment the complainant's bill must be dismissed. However, having been satisfied in open court that the defendant did not desire to enforce any forfeiture, and in my judgment it would be inequitable that he should, the decree will also provide that he return Mr. Cameron the moneys that have been paid, I think it is $439 and some cents, I am not sure as to the exact amount,

the interest and the $400. I think that is about justice and it has been consented in open court that he did not want to retain it, and would consent that it be returned and so the court will provide by its decree that this bill shall be dismissed, providing, however, that Dr. Shumway shall return this money within 90 days to Mr. Cameron, without interest. The costs to be taxed in favor of the defendant and the solicitor may prepare a decree in accordance with what I have said."

A decree was made in accordance with the opinion. The complainant has brought the case here by appeal. The defendant did not appeal. The case is carefully briefed. Complainant claims that all of the parol testimony in relation to the contesting of the taxes was improperly admitted because the option is a complete instrument in and of itself; citing many authorities. On the part of the defendant it is insisted that the testimony was proper under the facts shown in this case, counsel citing many authorities. We do not think it necessary to decide the question.

The record shows very clearly that the defendant never authorized Mr. Hendrick to sign the written agreement which was made by him with complainant, May 11, 1904. He simply gave Mr. Hendrick in the first instance "an option to July 1, 1904, to purchase of me for the sum of $2,500" certain land. It was signed by the defendant, but was never accepted in writing by Mr. Hendrick. On the 28th of June, 1904, another option was given running up to September 1, 1904, in which the following language is used:

"The said $200 is to be applied on the purchase price so that only $2,300 is to be paid on or before September 1, 1904, and when said balance is paid a warranty deed of said property is to be given and an abstract to date of transfer furnished showing perfect title, also a tax history is to be furnished."

This was signed by the defendant but was never accepted in writing by Mr. Hendrick. September 8, 1904, there was indorsed on the option the following:

"For and in consideration of the sum of $200, to me in hand paid, I do hereby extend the above option to December 1, 1904, at which time the balance, $2,100, will be due.

"Dated Lansing, Mich., September 8, 1904.

"F. W. SHUMWAY."

Later there was indorsed upon the option the following:

"For a valuable consideration I do hereby sell, assign, and transfer all my right, title, and interest in the within optional contract to Lowry Cameron.

"Dated Lansing, Mich., November 28, 1904.

"FRANK H. HENDRICK."

There was not on December 1, 1904, nor at any time previous thereto a written acceptance of said option by either Mr. Hendrick or Mr. Cameron, nor was there a payment made of the balance due or a tender made of the amount thereof. By the express terms of the option it was not until the payment was made that Mr. Hendrick was entitled to a deed and abstract.

The papers which had been signed by the defendant did not bind Mr. Hendrick to accept the option, and when he failed to do so on or before December 1, 1904, the defendant had no remedy against him. When Mr. Cameron took an assignment of the option, he obtained nothing more than was possessed by Mr. Hendrick, to wit, the right to pay the balance due according to the option on or before December 1, 1904, and when the balance was paid, to have a warranty deed with abstract showing perfect title, also a tax history. He did not see fit to make this payment, but, on the contrary, refused to make it until a warranty deed was executed and an abstract and tax history furnished. In *Myers* v. *J. J. Stone & Son*, 128 Iowa, 10, the following language is used:

"Generally an option may be defined as a contract by which the owner agrees with another person that he shall have the privilege of buying his property at a fixed price within a limited time. * * * It is neither a sale of land nor an agreement to sell, but merely the disposal of a privilege of electing to buy at a fixed price within the

time limited.    The other party acquires no lands, nor interest in land, not even a chose in action, prior to his election, but he does obtain, what is often of much value, the privilege, at his election, to demand and receive the conveyances of land."

See, also, *Litz* v. *Goosling*, 21 L. R. A. 127, and note (93 Ky. 185); *Potts* v. *Whitehead*, 23 N. J. Eq. 512; *Weaver* v. *Burr*, 31 W. Va. 736 (3 L. R. A. 94); *Harding* v. *Gibbs*, 125 Ill. 85; *Eggleston* v. *Wagner*, 46 Mich. 610; *Chapman* v. *Morgan*, 55 Mich. 124; *Gustin* v. *School District*, 94 Mich. 502; *Dunn* v. *Dunn*, 132 Mich. 461.

The decree is affirmed, with costs.

McALVAY, C. J., and CARPENTER, GRANT, and HOOKER, JJ., concurred.