DURFEE HOUSE FURNISHING COMPANY, INC. *v.* THE GREAT
ATLANTIC AND PACIFIC TEA COMPANY.

January Term, 1927.

Present:  WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed February 18, 1927.

*Vendor and Purchaser—Assignability of Option—"Option" De-
fined—When Option Becomes Contract—Right of Optionee
in Property—When Election under Option Takes Effect—
Landlord and Tenant—Rights of Lessee as Against Option
Holder—Relationship of Holder of Option in Lease to Per-
son Giving Option—Lessee's Rights of Possession as against
Option Holder.*

1.  Option agreement in lease to sell and convey leased property
during term of lease, *held* assignable.

2.  An option is an agreement by which one binds himself to sell and
convey to another party certain property at a stipulated price
within a designated time, leaving it in discretion of such other
party to take and pay for property.

3.  Option is not contract until accepted by optionee, prior to such time
being only continuing offer to sell and convey at price and
upon conditions therein specified, although giver of option is
bound to keep offer open and available in accordance with its
terms, but acceptance thereof rests wholly in discretion of
optionee, without obligation on his part with regard to it.

4.  Until option holder has accepted offer in accordance with its
terms, he obtains no estate or title, legal or equitable, in
property.

5.  Timely election under option and payment of purchase price do
not relate back to date of option and serve to cut off inter-
vening rights acquired with notice of existence of offer, since,
there being no contract until acceptance, contract takes effect
from date of acceptance.

6.  Where owner of premises leased part thereof with option in lease,
to such lessee and assigns, of purchase of entire premises dur-
ing term of lease, subsequent lessee of another part of premises
before acceptance of option was unaffected by constructive

notice of such option, since no legal right or title was obtained thereunder by optionee before acceptance.

7.  Where owner of premises leased part thereof with option in lease to such lessee and its assigns, of purchase of entire premises during term of lease, until acceptance of option, relationship of such owner and lessee and its assignee was that of landlord and tenant of that part of premises leased.

8.  Where owner of premises leased part thereof with option in lease, to such lessee and its assigns, of purchase of entire premises, relationship of vendor and purchaser of whole premises did not come into being until terms of option were complied with.

9.  Where owner of premises leased part thereof with option in lease, to such lessee and its assigns, of purchase of entire premises during term of lease, subsequent lessee of another part of premises before acceptance of option *held* entitled to possession of portion leased by it as against purchaser under option.

ACTION OF JUSTICE EJECTMENT. Plea, general denial. Trial by Fair Haven municipal court, *William H. Rowland,* Municipal Judge, on agreed statement of facts. Judgment for the defendant. The plaintiff excepted. The opinion states the case. *Affirmed.*

*E. D. Raymond* and *Lawrence, Stafford & Bloomer* for the plaintiff.

*Jones & Jones* for the defendant.

MOULTON, J. This is an action of ejectment, under G. L. 2146, 2147, and 2152, and was tried by the court below upon an agreed statement of facts, upon which judgment was rendered for the defendant. The case is here upon exceptions by the plaintiff.

By the agreed statement, the following facts appear: On July 22, 1921, Marion E. Heald, a widow, by written instrument, duly executed, delivered, and recorded, leased to the Cahee House Furnishing Company, a corporation, its successors and assigns, the south half of a building owned by her, situated in Fair Haven and known as the ''O. A. Peck Block,'' for the term of five years. This lease contained an agreement by the lessor

"to sell and convey by good and sufficient deed in law the 'O. A. Peck Block' to the lessee (said Cahee House Furnishing Company) its successors and assigns, upon payment by lessee to the lessor of the sum of fifteen thousand ($15,000.) dollars at any time on or before the expiration of the term of five years provided for in this lease." On June 29, 1923, the Cahee House Furnishing Company, by written instrument, duly executed and recorded, assigned all its right, title and interest in and to the lease and option to Ralph E. Durfee. On August 28, 1924, Mrs. Heald leased to the defendant corporation a certain store and cellar, theretofore occupied by it, in the "O. A. Peck Block," but not a part of the south half previously leased to the Cahee House Furnishing Company, for the term of one year, with privilege of renewal at a fixed monthly rental. This lease was in writing, duly executed, delivered, and recorded. On November 4, 1925, Ralph E. Durfee exercised the option in the lease which had been assigned to him, and upon the payment of $15,000 received from Mrs. Heald a warranty deed of the entire block, without the reservation therein of any right of the defendant to occupy any part of the premises. On November 5, 1925, Ralph E. Durfee, by quitclaim deed, conveyed the property to the plaintiff. Both deeds were duly executed, delivered, and recorded.

On November 9, 1925, the plaintiff gave written notice to the defendant that it had purchased the Peck Block, and stated that it recognized no leases upon the property, but should be glad to grant a new lease. So far as appears the defendant did not answer this letter, but, on the appropriate date, mailed the plaintiff a check for the rent due under the lease from Mrs. Heald. The plaintiff returned the check, again stating that it refused to recognize the lease. Further checks for rent were forwarded by defendant to plaintiff and returned. It is not necessary to state the details of this procedure, further than to say that the rent due under the Heald lease has been tendered with interest thereon, and refused. On January 9, 1926, the plaintiff gave the defendant notice to vacate the store, and upon the refusal by the latter to do so commenced this action.

The plaintiff bases its claim to recover upon the ground that the record of the lease containing the option agreement was constructive notice of the existence of the latter, and that having taken its lease subsequent to such record, although before

the option was exercised, the defendant's rights were subordinated to those of the optionee and its assignees.

[1]   That the relationship of landlord and tenant existed between the parties after the conveyance of the entire property to the plaintiff is clear.   The option agreement was assignable by the terms of the lease, as also by law (*Hagar, Admr.* v. *Buck,* 44 Vt. 285, 289, 8 A. R. 368, and see 18 Harvard Law Review, 457), and if, when Mrs. Heald leased to the defendant, she had, by the option agreement, parted with her title, the defendant had no right of possession, under such lease, as against the plaintiff.

This is an action of law, and the legal title to the property is alone to be considered.   The question here is, did the option pass to the optionee any legal title to the premises later leased by the optioner to the defendant?   The answer lies in a consideration of the nature of the option agreement.

[2, 3]   An option is an agreement by which one binds himself to sell and convey to another party certain property at a stipulated price within a designated time, leaving it in the discretion of such other party to take and pay for the property. *West Virginia Pulp & Paper Co.* v. *Cooper,* 87 W. Va. 781, 106 S. E. 55, 59.   Although usually described as a contract, it is evident that it is not such until accepted by the optionee, for, until that time it is only a continuing offer to sell and convey at the price and upon the conditions therein specified.   The optioner is bound that the offer shall be kept open and available in accordance with its terms, but its acceptance rests wholly in the discretion of the optionee, and there is no obligation upon the latter with regard to it.   *Bras* v. *Sheffield,* 49 Kan. 702, 31 Pac. 306, 307, 308, 33 A. S. R. 386; *Luigart* v. *Lexington Turf Club,* 130 Ky. 473, 113 S. W. 814, 816, 817; *Newton* v. *Newton,* 11 R. I. 390, 23 A. S. R. 476; *The Boston & Maine Railroad* v. *Bartlett,* 3 Cush. (Mass.) 224, 227; *Caldwell* v. *Frazier,* 65 Kan. 24, 69 Pac. 1076, 1077; *Rease* v. *Kittle,* 56 W. Va. 269, 49 S. E. 150, 153, 154; *Sweezy* v. *Jones,* 65 Iowa, 272, 21 N. W. 603; *Gustin* v. *School Dist.,* 94 Mich. 502, 54 N. W. 156, 157, 34 A. S. R. 361; *Cameron* v. *Shumway,* 149 Mich. 634, 113 N. W. 287, 290; *Womack* v. *Coleman,* 92 Minn. 328, 100 N. W. 9, 11; *Kadish* v. *Lyon,* 229 Ill. 35, 82 N. E. 194, 196; *Thatcher* v. *Weston,* 197 Mass. 143, 83 N. E. 360, 361; *Phoenix Ins. Co.* v. *Kerr* (C. C. A.) 129 Fed. 723, 66 L. R. A. 569, 573.

[4] It has sometimes been assumed that an option is an offer to make a bilateral contract, and that the acceptance completes such contract, but the late Professor C. C. Langdell (18 Harvard Law Review, 1, 11) points out that an option is a conditional unilateral contract, and that acceptance is the performance of the condition pure and simple. However, it does not matter which theory is adopted; the result is the same. There is no completed contract for the sale of the property until the optionee has accepted the offer according to its terms, or, to put it otherwise, has performed the condition contained in the offer. *Barnes* v. *Rea*, 219 Pa. 279, 68 Atl. 836, 838; *Sirk* v. *Ela*, 163 Mass. 394, 40 N. E. 183. Then, and then only, can the contract be specifically enforced. *Hayes* v. *O'Brien*, 149 Ill. 403, 37 N. E. 73, 75, 23 L. R. A. 555; *Stembridge* v. *Stembridge's Estate*, 87 Ky. 91, 7 S. W. 611, 612; *Edwards* v. *West*, 7 Ch. Div. 858, 862. And until then the optionee obtains no estate or title, legal or equitable, in the property. *Stembridge* v. *Stembridge's Estate, supra; Caldwell* v. *Frazier, supra; Rease* v. *Kittle, supra; Sweezy* v. *Jones, supra; Gustin* v. *School Dist., supra; Cameron* v. *Shumway, supra; Womack* v. *Coleman, supra; Kadish* v. *Lyon, supra; Thatcher* v. *Weston, supra; Phoenix Ins. Co.* v. *Kerr, supra; Luigart* v. *Lexington Turf Club, supra; West Va. Pulp and Paper Co.* v. *Cooper, supra; Bras* v. *Sheffield, supra.*

[5] Nor does a timely election under the option and payment of the purchase price relate back to the date of option, and serve to cut off intervening rights acquired with notice of the existence of the offer, as claimed by the plaintiff. True, some cases go to this extent, among which we note *Smith* v. *Bangham*, 156 Cal. 359, 104 Pac. 689, 28 L. R. A. (N. S.) 522; *Crowley* v. *Byrne*, 71 Wash. 444, 129 Pac. 113; *St. Ry. Co.* v. *Spencer*, 156 Pa. 85, 27 Atl. 113, 36 A. S. R. 22; *Horgan* v. *Russell*, 24 N. D. 490, 140 N. W. 99, 43 L. R. A. (N. S.) 1150. These holdings are to be justified only upon the theory that the option agreement, before acceptance, vests an equitable interest in the property in the optionee. Even if we were to adopt this view it would not avail the plaintiff here, because, as we have seen, the legal title only, is cognizable in this action. But we think the true rule, based upon the better reasoning, and supported by the weight of authority, is otherwise. Since there is no contract until acceptance, such contract takes effect from the date of its acceptance and not from the date of the offer. *Strong* v. *Moore*, 105

Ore. 12, 207 Pac. 179, 23 A. L. R. 1217, 1222, 1223; *Edwards* v. *West, supra; Gilbert & Ives* v. *Port,* 28 Ohio St. 276, 293, 300; and cases cited in last foregoing paragraph, all of which support the rule as here stated.   Accordingly it was held in *West Va. Pulp and Paper Co.* v. *Cooper, supra,* that the rights of a creditor of the optioner under an attachment upon the property subsequent to the giving of the option, but before acceptance, were paramount to those of the optionee in the premises.   In *Strong* v. *Moore, supra,* and *Edwards* v. *West, supra,* the proceeds of policies of insurance upon property burned after the giving of the option but before acceptance, were held to belong to the optioner, and a subsequent election to take under the option, and within the time limited, did not make it otherwise.   In the case last cited, after pointing out that there was no contract capable of specific performance, until acceptance of the option, the learned judge said (7 Ch. Div. 858, 862):

> "In the first place, it has been said that by the law of England the exercise of the option causes it to relate back to the time of the creation of the option in such a manner as to render the property for this purpose property of the purchaser as from the date of the contract which gave the option; so that here, although the option was given by a contract, made in April, and not exercised till the 28th day of September, yet that when it was so exercised on the 28th of September, it operated retrospectively, and made the property the property of the purchaser as from the month of April preceding, and consequently made the vendor trustee of the fruits of the property for the purchaser. Now it appears to me that such a conclusion would be highly inconvenient, because it would place a person under the obligations which rest upon a trustee, or make him free from them, by reference to an act which was not performed until a future day; and the retrospective conversion of a person into a trustee of property is a result eminently inconvenient. In the next place, the argument appears to me to be opposed to the general course of authority and principle."

[6-8]   Thus it appears that the question of constructive notice arising from the record of the lease containing the option agreement is not in this case.   Since, as we hold, no legal right or title was obtained thereunder by the optionee, before acceptance, and since its rights or those of its assignee therein took effect at the time of such acceptance, and not before, the rights

14

of the defendant, under its lease, would be unaffected by the constructive notice, if such there was. Until the acceptance the relationship of Mrs. Heald and the plaintiff and its assignor, was that of landlord and tenant of that part of the premises leased. The relationship of vendor and purchaser of the whole premises did not come into being until the terms of the option were complied with. *Luigart* v. *Lexington Turf Co., supra; Mack, Admr.* v. *Dailey,* 67 Vt. 90, 92, 30 Atl. 686.

[9] This holding makes it unnecessary to consider the other question presented by the defendant in its brief. We find no error in the judgment below.

*Judgment affirmed.*