**POWELL v. HAMMON CONSOL. GOLD FIELDS.**

**POWELL et al. v. SAME.**

Nos. 3100, 3101.

Second Division.

Nov. 12, 1929.

Ira D. Orton (of Lyons & Orton), of Seattle, Wash. for plaintiff.

O. D. Cochran, of Nome, and Robert L. McWilliams, of San Francisco, Cal., for defendant.

LOMEN, District Judge.

The importance of these cases may be measured by the amounts involved and the installments which will annually fall due under the leases until 1935, aggregating about $800,000. The action already tried furnishes a precedent, in part, for judicial determination. The contracts upon which the present actions are founded are the same as in the former case; but the relation of the parties has changed, it is claimed, in the particular that in the said former case the royalties and minimum annual payments had *already* accrued, before the alleged surrender of the premises by the defendant, whereas the present actions are for royalties and minimum annual payments *since* accruing. To the extent of the interpretations placed upon the contracts, with reference to the liability of the defendant in the former case, the same liabilities would seem to follow in the instant cases, unless the "surrender" would make a difference.

Plaintiffs question defendant's *right* to surrender and also defendant's surrender *in fact*. Upon these issues defendant has the burden of proof. The written notice sent to the Nome Dredging Trust was *qualified* as to the surrender of the lease and option from it, and did not purport to refer to the other leases and options, and was not a notice to the other lessors, and was *in futuro*. A "copy," however, was sent to the owners of the properties enumerated in schedules B, C, and D, who were *incidentally* mentioned. The notice was subscribed by the president of

the defendant, lessee, who was not shown to have authority or power to give such notice or to surrender the properties.

Assuming that power was vested in the president to make surrender, the defendant acted upon the theory that it was entitled to make surrender, and that thereafter its liabilities under the leases would cease, except as to the payment of royalties, if any, that would accrue in "dredging out," while removing the dredges from the premises.

■ ■ The defendant had no right under the terms of the leases to terminate them. That was a privilege only vouchsafed to the lessors, and was optional on their part, on declaring a forfeiture by the defendant. It is true that defendant was made the sole judge of how and when and where the dredges should be used; but this had no relation to the *duration* of the leases, which contained the provision that defendant should, notwithstanding, "pay to the owner the minimum annual payments, *and* excess of minimum annual payments above and *over royalties paid up to the time of cessation of mining operation."* There would, of course, be no "royalties" after such time, only minimum annual payments. Again the option to purchase provided: "The said payments on account of purchase price shall also be deemed to be, and shall constitute, rental for the use and occupation of said mining property, *hereby demised and leased, for the full term of said lease."* (Italics ours.) Both the lease and the option to purchase made the rentals run during the full term of the lease. The minimum annual payments were graduated according to the circumstances, depending upon the royalties *"paid,"* nor did the election not to purchase make any difference. The only remedy on the part of defendant, if dissatisfied with the results, was to purchase the leased premises and thus cause a *merger* of the lease in a conveyance to it. We see no reason in the argument that payments on the purchase price should "be deemed to be and shall constitute rentals," and would cease to be such, because and if de-

fendant should exercise its option not to purchase. Leases with the guaranteed minimum royalties are a very common form of contract, Moxham v. Sherwood Co. (C.C.A.) 267 F. 781, where it is stated in the opinion that eighty such cases were cited by counsel. The rentals, including royalties paid, may apply on the purchase price; and, vice versa, the "payments" made on purchase price may be applied as rentals during the life of an option. It was so provided in the "contract," Exhibit I. Compare paragraphs 9 and 16. The life of the options, unless sooner terminated by purchase, was during the life of the leases.

Certain additional defenses are relied upon by the defendant. We shall consider them in the following order:

■■ 1. It is claimed that, because the Nome Dredging Trust is not a legal entity, and by such name cannot sue or legally hold property, in the state of Washington, where organized, its lease and option to purchase lands, in Alaska, is void. The title, however, was held in the name of trustee.

It was held in State ex rel. Range et al. v. Hinkle, 126 Wash. 581, 219 P. 41, 43, that a common-law trust has "no legal status in this state [Washington], and is without legal standing in this court."

But in Denny v. Cascade Platinum Co., 133 Wash. 436, 232 P. 409, it was held that the *trustees* of such a trust may sue in the courts of that state to "protect property rights of beneficiaries." It was said in that case: "It may be conceded that the trust has no standing in law as a legal suable entity. That, however, does not mean that the trustees of the property that *happens to be held in that name* [of the trust] may not seek in the courts protection of the property rights of the beneficiaries of that trust."

The property of the trust happens to be situated in Alaska. Here we have no inhibition against common-law trusts. By section 796, Compiled Laws of Alaska, the common law was extended to Alaska; and there are no statutes upon the subject of common-law trusts. The

Nome Dredging Trust is not a corporation or joint-stock company within the meaning of the laws of the territory relating to foreign corporations, as we understand it. Compare sections 654 to 661 Compiled Laws of Alaska, and section 654, Id., as amended by chapter 69 Session Laws of 1923, and section 660, Id., as amended by chapter 32, Session Laws of 1923. The titles of said amendments do not "embrace the subject" of a common-law trust, and relate only to "Foreign Corporations." Section 8 of the Organic Act, approved August 24, 1912 (48 U.S.C.A. § 76) provides that "no law shall embrace more than one subject, which shall be expressed in its title." We conclude that the trust is not amenable to the corporation laws of Alaska. Compare Eliot v. Freeman, 220 U.S. 178, 31 S.Ct. 360, 55 L.Ed. 424; Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601; Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949.

■ 2. It is claimed by defendant that, under the "deed of settlement" creating the Nome Dedging Trust, the trustees thereof had no power to lease the property beyond the five-year limitation of the trust. However, the trustees were given title and full management of the corpus of the trust estate, with full power to *sell, convey, and let* the premises. It was an active trust. The legal estate remained in them. "Trustees who have the legal fees in lands may lease them to any extent; the right being incident to the legal estate." Hines v. McCombs, 2 Ga.App. 675, 58 S.E. 1124, 1125, quoting from Washburn Real Property. The beneficiaries were only entitled to profits, which, until liquidation, also remained in the trustees. Their title as lessors cannot be questioned by a tenant. The trust was express, and the trustees had power to sue, without joining the beneficiaries. Section 859, Compiled Laws of Alaska. The title being in the trustees, they had plenary power in regard to the properties mentioned in schedules A. The properties mentioned in schedules B, C, and D were no part of the trust estate. So far as the Powell leases were

concerned, the trust was a "go-between." So long as the defendant was not evicted, and no threat was made to evict, the defendant had nothing of which to complain. No fraud or mistake, and no cause for a rescission of the contract is alleged. The leases ran for a term of twelve years, or until December 31, 1935, and the defendant could not, therefore, surrender before that time, without the consent of the landlord.

█ 3. It is argued, however, that no consent was necessary. It is conceded that, so long as the premises were occupied, the defendant was bound to pay the royalties, and, to preserve the option to purchase, that defendant was also compelled to pay the minimum annual payments. The defendant places a construction upon the leases and options which would render both of them optional, and that after a surrender there would, in consequence, be no royalties and no minimum annual payments. There is no warrant for such construction of the contracts. The rentals were for the full term of the lease, including "royalties, and/or minimum annual payments." As stated, the remedy of the defendant was to cause the lease to merge in a deed upon the exercise of the option to purchase. If such option was not exercised, the lease would continue. The plaintiffs alone could declare a forfeiture, at their option. True, defendant had the right to mine or not to mine, provided it paid the minimum annual payments, and royalties while "dredging off." This, however, had nothing to do with the termination of the lease. There is nothing inconsistent in giving an option to purchase leased premises nor in providing that rentals should apply on the purchase price in case of an optional purchase. Nor do we conceive any inconsistency in fixing the rentals at the same amount whether the option be, or be not, exercised. It may turn out to be unfortunate for one of the parties; but it is no reason for breaching the leases; nor is it a reason for surrender of the premises. The argument that minimum annual payments were required to preserve the option, and that the lease was incidental to the option, and

not vice versa, is too specious and refined to show that such was the intention of the parties.

■ ■ The leases were made for a certain term, the rentals were the same throughout, while the options were problematical. The parties so regarded them; no misnomer or mistake is alleged. The option called for an election. The lease could not be surrendered without the consent of the lessor. We find no ambiguity that calls for construction. There is no completed contract for the sale of property under an option until the optionee has accepted the offer according to its terms. Under a lease with option to purchase, the relation of the parties is merely that of landlord and tenant *until the option is exercised* and the relation of vendor and purchaser does not arise until that time. The lease continues. 16 R.C.L. 805–808. The option does not relate back to the date of the lease, unless it is so specified—i. e., that the rentals paid shall apply on the purchase money. Where the option is not exercised, they do not apply on the purchase price, but remain as rentals. There being no acceptance of the surrender, the landlord thereby reserved the right to recover the rent. Willis v. Kronendonk, 58 Utah, 592, 200 P. 1025, 18 A.L. R. 947. The question is not whether the option is continued. The action is one at law. Equitable principles do not obtain. If the lessor had accepted the surrender, the case might have presented a different aspect. The lessor might then have been estopped to claim the rent. Durfee House Furnishing Co. v. Great Atlantic & Pacific Tea Company, 100 Vt. 204, 136 A. 379, 50 A.L.R. 1309. The defendant evidently *confused* the legal effect of the option with the terms of the lease, and concluded that, because he had the right *not* to exercise the option, he had a right to surrender the lease, clearly, a non sequitur.

■ 4. Besides, the surrender was to the Nome Dredging Trust. By the novation, the latter was eliminated as a party to the Powell lease. The defendant could not, by a surrender to a former lessee, be released without the

consent of Powell, the lessor. Bouvier, "Novation"; Hume v. Brower, 25 Ill.App. 130.

5. The third cause of action in case No. 3100, being on the assignment of Alaska Dredging Company to Powell of the royalties and minimum annual payments due under the lease of properties mentioned in schedule B, was eliminated by the granting of a motion of nonsuit. The status of the assignor as a corporation, and the defense of "accord and satisfaction" interposed to said cause of action, therefore, need no consideration.

The plaintiffs are entitled to judgment in both actions as prayed for, except as to the third cause of action in the Powell Case, as to which a nonsuit was entered.