# CHARLESTON.

WEST VIRGINIA PULP & PAPER CO. *et al.* v. JOHN T. COOPER.

Submitted February 8, 1921.    Decided February 22, 1921.

1. VENDOR AND PURCHASER—*Land Subject to Attachment, Although Owner Has Given Unsigned, Though Recorded, Option Thereon.*

    A proposition or option in writing to sell and convey a specific tract of land, at a certain price per acre, and within the time stipulated therein, not signed by the optionee or his agent, nor binding on him, though recorded, leaves the title to the land in the optionor, subject to attachment at the suit of his creditor, but subject to whatever rights the optionee thereby acquired in the land. (p. 789).

2. SAME—*Unaccepted Option Vests No Title in the Optionee or His Assignee.*

    Such option contract before acceptance vests no title, legal or equitable, in the optionee, and the assignment thereof by the optionee vests no title to the land, legal or equitable, in his assignee. (p. 789).

3. SAME—*Land Subject to Attachment, Although Unaccepted, But Recorded, Option Thereon Given.*

    Though such option contract, when recorded pursuant to section 4 of chapter 74 of the Code, protects the optionee or his assignee in any rights acquired under the contract, they

are not complete purchasers of the land, and the land remains subject to attachment at the suit of a creditor of the optionor. (p. 790).

4.   LIS PENDENS—*Purchaser Under Unaccepted Option Pending Attachment Held a Pendente Lite Purchaser.*

When pending a suit by a creditor, and upon attachment levied to sell the land, in the lower court or here upon appeal, such optionor undertakes to sell and convey the land attached to such optionee or his assignee, the purchaser or purchasers are *pendente lite* purchasers and will be bound by any decree made in the cause affecting the rights of the vendor or his attaching creditor. (p. 791).

5.   SAME—*Purchaser of Land Pending Appeal in Attachment Suit a Pendente Lite Purchaser.*

And if one purchases such land pending a rehearing awarded here on appeal by the optionor, from the decree below against him, and the decree subsequently entered here reverses the decree below, dismisses plaintiff's bill and quashes his attachment, nevertheless, if upon a bill of review filed in time by the plaintiff for newly discovered evidence, the decree of this court be set aside or reversed, and upon such original bill and bill of review the decree be in favor of plaintiff for his debt, and upon the attachment originally levied, that the land attached be sold to satisfy the same, such purchaser will be bound by such decree as a *pendente lite* purchaser. (p. 791).

6.   SAME—*Decree Upon Bill of Review Held Binding Upon Pendente Lite Purchaser.*

While the filing of a bill of review constitutes a new suit for some purposes, as does also the suing out of appellate process, and to the extent of protecting purchasers under the judgment or decree sought to be reversed, nevertheless, for the purposes of protecting plaintiff's or appellant's rights and preserving jurisdiction of the subject matter of the suit, they constitute a continuation of the old suit, and as against all *pendente lite* purchasers of the property involved, the property proceeded against remains subject to the jurisdiction of the court, and any decree pronounced upon such bill of review or appeal, binds such *pendente lite* purchaser as well as the parties to the suit. (p. 792).

7.   EQUITY—*Bill Lies to Review Decree for After-Discovered Evidence After Determination on Appeal.*

That a bill of review lies to review for after discovered evidence a decree below after affirmance or reversal here on appeal, is settled law in this state. (p. 792).

Appeal from Circuit Court, Upshur County.

Suit by the West Virginia Pulp & Paper Company and another against John T. Cooper.    Decree for defendant, and plaintiffs appeal.

*Modified and affirmed.*

*E. A. Bowers, Talbott & Hoover* and *Young & McWhorter,* for appellants.

*W. E. R. Byrne,* for appellee.

MILLER, JUDGE:

Plaintiffs, the West Virginia Pulp & Paper Company and the Upper Elk Coal Company, on May 23, 1918, filed their bill in the Circuit Court of Upshur County against the defendant John T. Cooper, among other things alleging that they were the owners and were in possession of a tract of land called the Upton Tract of 10,012 acres, lying in Webster, Randolph and Pocahontas counties, and that the same land had been decreed to be sold to satisfy a debt of $12,404.00 with interest and costs in a suit upon a bill of review pending in said court, in which said Cooper was plaintiff and Carolyn Upton and others were defendants, by a decree entered therein on June 8, 1917, to enforce the lien of certain attachments levied upon said land in the original suit of Cooper against E. M. Upton, then in life, now deceased; and further charging that said attachments for the reason alleged were void and unenforceable by a sale of said land, and that said decree of sale constituted a threatened cloud upon their title thereto, and a menace and prejudice to plaintiffs, affecting the market value thereof; and further charging that they were not liable for said debt, and were not advised whether the defendants in said suit intended to satisfy the debt so decreed to Cooper, but believed they did not so intend, and that they were advised and believed that the special commissioner appointed to sell the land would proceed to enforce said decree unless prevented by process of law.    And upon said bill, on the day of the filing thereof, plaintiffs obtained an injunction restraining and inhibiting Cooper from proceeding in any way whatsoever to enforce his decree of sale of June 8, 1917, against said tract of 10,012 acres and every part thereof, until the further order of the court.

To this bill Cooper appeared and demurred, assigning as grounds: first, that the facts alleged therein do not justify the granting of the relief prayed for; second, that plaintiffs have an adequate remedy, if entitled to any relief, by proceeding pursuant to section 23 of chapter 106 of the Code.

The final decree which appellants would have us reverse, pronounced on March 23, 1920, adjudicated that defendant's demurrer be sustained as to the first ground, but overruled as to the second, and plaintiffs declining to amend, it was adjudged that their bill be dismissed and that the injunction theretofore awarded thereon be and the same was wholly dissolved, and that defendant recover his costs.

The bill with the accompanying exhibits disclose the fact that none of the appellants were parties to the original suit of Cooper against Upton, nor were they impleaded upon the bill of review.

Three principal propositions are advanced by appellants for reversal of the decree:    First, that the circuit court in its final decree upon Cooper's bill of review for after discovered evidence erroneously adjudged that the attachments sued out by him upon his original bill and levied upon said Upton tract of 10,012 acres, upon the filing of said bill of review within one year after final decree, continued to constitute liens on said land and enforceable thereby, regardless of the prior decision of this court upon appeal by Upton reversing the decree below against him in favor of Cooper, quashing said attachments and dismissing his bill, first pronounced November 27, 1906, 60 W. Va. 648, and finally determined in the same way on rehearing by decree and mandate entered here, and certified to the circuit court on March 30, 1909, 65 W. Va. 401; Second, that the court below erroneously held that the original notices of *lis pendens* of Cooper's original suit so finally dismissed by this court upon appeal constituted sufficient notices of his *lis pendens* on bill of review; Third, that the circuit court by its decree on bill of review erroneously held that the contract of sale in writing, purporting to have been made by one J. K. Moore, as agent for Upton, dated April 8, 1902, and recorded in Randolph County April 28, 1902, in Pocahontas County May 1, 1902, and in Webster County May 8, 1902, under which

appellants claim title to said 10,012 acres, did not constitute an equitable sale of said land, with notice to Cooper, a creditor, precluding him from asserting a lien thereon by attachment sued out on the date of his original suit, May 28, 1903, and levied in Webster and Randolph counties respectively May 28, and May 30, 1903.

We are disposed to respond to these propositions in the inverse order of their statement by counsel.   The alleged contract by Moore as agent for Upton, of April 8, 1902, relied on to defeat the lien of Cooper's attachment is as follows:

"April 8, 1902.

"As Agent for E. M. Upton, of Rochester, N. Y., and others, owners of what is known as the Porter tract of land consisting of ten thousand and twelve (10012) acres, situated in the counties of Pocahontas, Randolph and Webster, West Virginia, and on the Leatherwood and Bergo Creeks which empty into the Elk River, I sell the above tract to Arthur Lee, Trustee, in fee, at Thirteen dollars ($13.00) per acre, to be paid for in cash upon delivery of a general warranty deed with good and sufficient title free from incumbrances.

"I hereby acknowledge receipt of a check for five thousand ($5,000.00) in favor of E. M. Upton, on the Mercantile Trust and Deposit Company of Baltimore signed by H. G. Davis, as payment on account of the purchase money upon above Porter tract.

"My authority for signing this agreement of sale is letters, and a telegram from E. M. Upton, dated Rochester, N. Y. April 7, 1902, addressed to me, and which reads as follows:— 'Close deal at thirteen dollars net to us, if five thousand dollars is deposited in some bank as Trustee.'

"Signed in duplicate.        J. K. MOORE, *Agent.*"

This paper purports to have been acknowledged before a notary public in Washington, D. C., April 24, 1902, and to have been recorded in Webster and Randolph counties, on April 28, 1902, and May 1, 1902, respectively.   The record shows, however, that while the legal title to the land stood in the name of Upton, others were beneficially interested with him and that subsequently, on May 16, 1902, at a meeting of the owners in New York, a paper was signed by them but not then acknowl-

edged.    On June 23, 1903, it was acknowledged by Baldwin, Upton and McGraw before a notary public of Taylor County, West Virginia, and proven by the oaths of Upton and Baldwin as to Warner, Beckley and Rumsey before the clerk of the County Court of Randolph County on June 24, 1903, and on the same day admitted to record in that county by him, as follows:

"Memorandum of agreement made and entered into this sixteenth day of May, 1902, by the parties hereto.

"Whereas Eli M. Upton holds the legal title to what is known as the Elk lands, comprising ten thousand and twelve (10012) acres on the waters of Elk River in the state of West Virginia, and better known as the Porter land; and

"Whereas the said Eli M. Upton, with the concurrence and consent of all the owners of said land with the exception of John T. McGraw did sell the said Arthur Lee, Trustee, for Henry G. Davis, at and for the sum of thirteen dollars ($13) per acre net to the owners thereof; and

"Whereas at a meeting of all of the owners of said land this day held at the Waldorf-Astoria Hotel, in the city of New York, all of the parties owning said lands have concurred in said sale and desire to ratify and confirm the act of the said Eli M. Upton in so selling said land to said Lee, Trustee for said Davis at said price of thirteen dollars ($13) per acre; and

"Whereas the said McGraw declining to concur in the sale of said land and at said meeting of the owners thereof this day held the said McGraw, for reasons which are sufficient and satisfactory to him, did concur in said sale, this making the sale of the whole of said land comprising said ten thousand and twelve (10012) acres to said Lee, Trustee for said Davis, full and complete.

"Now therefore this agreement witnesseth: That the said parties, the owners of said lands, do concur in, ratify and confirm the act of the said Upton in selling the said land to said Lee, Trustee for said Davis, thus making the title of the said land full and complete in the purchaser thereof under the sale so made by the said Upton, Trustee.

"Witness the following signatures and seals.

E. M. Upton,

A. T. Baldwin,

C. M. Warner,

L. N. Beckley,

Jno. T. McGraw,

William Rumsey."

It will be observed that neither Arthur Lee, Trustee, nor Henry G. Davis were subscribing parties to either of these papers; and the bill shows that no attempt was made to put them into execution by deed until July 9, 1903, on which day a deed purporting to have been made by Eli M. Upton and Fannie M., his wife, parties of the first part, and Arthur Lee and Grace D. Lee, of the second part, and Henry G. Davis of the third part, was acknowledged by said first parties in Monroe County, New York, on July 14, 1903, and by the second parties in Randolph County, West Virginia, on July 24, 1903, and together with a decree of the Circuit Court of the United States for the Northern District of West Virginia, referred to in said deed, was admitted to record in Randolph County, which deed recites the source of title of said Upton, that he had contracted to sell said land to Arthur Lee, Trustee, at the price of thirteen dollars per acre, and that at the time of said sale there was pending undetermined in the said Circuit Court of the United States for the Northern District of West Virginia a suit in equity in which said Upton was plaintiff and James Woodzell and others were defendants, in which the title and boundary of said land was in controversy, and in which suit by decree pronounced June 12, 1903, the right and title of so much of said 10012 acres as laid in Randolph County, estimated at 7800 acres, was confirmed, and reciting also under a "whereas" that said Davis had elected to take at said price of thirteen dollars per acre all of the boundary of said land lying in the County of Randolph, estimated to be 7378 acres, and all thereof lying in Pocahontas County, estimated at 150 acres, and aggregating 7528 acres, and to pay for the same at the rate of thirteen dollars per acre, as part performance by said Upton of his contract, and which election was accepted and concurred in by said parties of the first part, and which deed further wit-

nessed that for and in consideration of thirteen dollars per acre, aggregating $97,864.00, paid to the said Eli M. Upton by the said Henry G. Davis, the receipt whereof was thereby acknowledged, the said parties of the first and second parts thereto purport to grant and convey by metes and bounds unto said Davis those portions of said land lying in the counties of Randolph and Pocahontas, aggregating 7528 acres. And said deed also provided that the title to the remaining parts of said 10,012 acres lying in the county of Webster was to remain in said Upton for the present, subject to the said contract of sale to Arthur Lee, Trustee. This deed was admitted to record in Randolph County July 24, 1903. If ever admitted to record in Pocahontas County, the record does not show it.

Said contracts and so much of said deed to Henry G. Davis are recited herein for the purpose of showing the nature of the contracts and deed, and the status of the title to said land, and the record thereof as affecting the right of Cooper depending on his attachments sued out and levied thereon on May 28, and following, in 1903. As already shown, these attachments antedated the recordation of the alleged contract of May 16, 1902, not recorded until May 23, 1903, but were subsequent in date to the alleged contract of April 8, 1902, recorded April 24, 1902. The present bill with its exhibits shows that the authority of Moore to make this unilateral contract was put in issue in the original suit of Cooper against Upton; and it appears from the record of that suit, exhibited with the bill in this suit, that the contract was not ratified by the owners until the contract of May 16, 1902, not recorded until June, 1903. But assuming authority of Moore to make the contract, what was its effect on the rights of Cooper as an attaching creditor of Upton, in his original suit and the attachments then levied on said land? Clearly, neither of these contracts or papers amounted to more than propositions or options to sell the land to Lee, Trustee for Davis, not accepted by Davis or Lee until the deed for the Randolph and Pocahontas lands was executed and delivered on July 9, 1903, for in that deed it is recited, as already shown, that Davis thereby elected to take not all, but only the portions of said tract lying in Randolph and Pocahontas counties; and it is pertinent to again refer to the facts

recited in the deed that the election was not made until after the date of the decree in Upton versus Woodzell, settling Upton's title to the Randolph part of the land, had been entered. Another pertinent fact appearing upon the face of the bill and exhibits, is that by the deed of June 9, 1903, Upton thereby acknowledges payment of the entire amount of the purchase money for the acreage Davis so elected to take.    It does not appear that the check for $5,000.00, not cash, receipted for in the option contract of April 8, 1902, was ever collected, or that any other thing of value was parted with by Davis or Lee at that time.

Appellants took title under Davis, and unless the proposition affirmed and relied on by counsel be well founded in law, namely, that the making and recordation of the contract of April 8, 1902, precluded Cooper from acquiring by his subsequent attachments any rights upon the land contracted for, Davis when he  elected in July, 1903 to take the land and procured the deed of that date from Upton and the Lees, was a *pendente lite* purchaser with notice of the attachments and the *lis pendens* recorded.

The proposition of counsel depends on the character of Upton's title or right after the record of the option contract, and whether the land standing in his name was attachable at the suit of Cooper. The position of the appellants' counsel is that Cooper's only remedy, in view of the recorded contract, was to summon Davis, or Lee, Trustee, as garnishees, and thereby acquire a lien on the money in their hands due Upton on the contract.    But only Upton, not Lee or Davis, was bound by these unilateral agreements.    Davis did not elect to take the land until after Upton's title had been adjudicated by the Federal Court, in June, 1903.    In this status of the title and the rights of the parties, was not the land of Upton attachable? If the land was attachable, then Cooper by his attachments, as decreed by the lower court, acquired a lien thereon, and process of garnishment was not his remedy.    At this time neither Davis nor Lee, Trustee, owed Upton anything, and no doubt this would have been their defense on garnishment.

A contract by which one binds himself to sell and convey to another certain property at a stipulated price within a speci-

fied or reasonable time, leaving it in the discretion of the other party to take and pay for the property, is termed in law an option contract. Such a contract transfers to the optionee no title to the property. His right is not in rem, but in personam. The right thus acquired is to call for specific execution within the time limited. 21 Am. & Eng. Enc. Law, pp. 924, 925. And we have held, in accordance with the principle laid down in the authority cited, that such an option contract does not vest in the person to whom the offer of sale is made any title to the land, either legal or equitable, and that his assignment under the contract passes no title to the assignee. *Rease* v. *Kittle,* 56 W. Va. 269. So that, according to the authorities, neither Davis nor Lee acquired any title to the land of Upton invalidating Cooper's attachments.

But counsel for appellants say they are fully protected in their rights by section 4 of chapter 74 of the Code, providing: "Any contract in writing, made in respect to real estate or goods and chattels, in consideration of marriage, or made for the conveyance of real estate, or a term therein of more than five years, shall, from the time it is duly admitted to record, be, as against creditors and purchasers, as valid as if the contract was a deed conveying the estate or interest embraced in the contract." Undoubtedly this statute protected Davis and Lee in whatever interest they acquired by the contract. But it amounted simply to an unaccepted option at the time of Cooper's attachments; neither got anything thereby except the right at his election to buy, and then subject to whatever rights may have intervened in favor of others against the land. In case judgment had been recovered against Upton and recorded against the land, the optionee, when he came to exercise his right of purchase subsequently, would have been bound to take notice, and before paying the purchase money would have had the obligation thrust upon him of seeing the lien discharged out of the purchase money. And the same obligation would rest on the purchaser exercising his rights under the option, to look after liens acquired on the land by attachments properly levied. The cases of *Conaway & Smith* v. *Sweeney,* 24 W. Va. 643; *Thorn* v. *Phares,* 35 W. Va. 771; and *Withers* v. *Carter,* 4 Gratt. 407, involved cases where actual sales of land by contracts recorded

were involved, and of course the rights of the purchasers were protected by the statute.     But here we have only the option contracts, with right of election to take or not to take the land, not exercised until after the rights of Cooper under his attachment became effective.

The proposition advanced by counsel   for appellants that lands thus sold or optioned but not yet conveyed is not   subject to attachment, is negatived by the authorities. They hold that the interest of the vendor in the land is attachable.   6 Corpus Juris, p. 207, sec. 378.   In *Sheehy* v. *Scott,* 128 Iowa 551, the direct question here presented was involved.   It was there held that when the contract though executory is completed, the vendor holds the legal title in trust, and his interest in the land is not attachable; but when the contract, as in the case here, is not purely executory and in no way binds the optionee to complete the purchase, the contract does not vest in him any interest in the land, and that the land is attachable as the land of the vendor.    And in *Coggshall* v. *The Marine Bank Co.,* 66 Ohio St. Rep. 88, it was decided that the interest of a vendor in such a case is not that of a mere naked trustee for the vendee, but a beneficial estate in the lands to the extent of the unpaid purchase money.   The rule must apply with greater force, where as here the contract was unilateral, not binding on the purchaser, without acceptance of the option, converting the contract into one binding him also.   See, also, as bearing on this proposition, *Brett* v. *Thompson,* 46 Me. 480, and *French* v. *Sturdivant,* 8 Me. 246.

Upon these authorities we conclude that the interest of a vendor in an option contract, unilateral in character, not binding on the vendee, but with right of election in him to purchase, is an interest in land subject to attachment at the suit of a creditor of the vendor, and binding the interest of the vendor therein.

The next question covering the first and second propositions advanced, is, were the rights of Cooper as attaching creditor of Upton terminated by the final decree of this court upon appeal by Upton from the decree in favor of Cooper in his original suit, pronounced here November 30, 1909?   The appellants claim title under Davis and McGraw, and their pur-

chases were all prior to the date of the final decree of this court. The case was pending in this court upon rehearing granted Cooper when the Upper Elk Coal Company acquired its title, and continued pending, either in the court below or here, from the time it was instituted until the final decree of March 30, 1909. So that Davis and his successors in title were all *pendente lite* purchasers as to Cooper's suit and bound by notice thereof unless relieved by the final decree here, and were unaffected by Cooper's bill of review filed in the circuit court for after discovered evidence on October 19, 1909, only a little more than six months after the date of said final decree.

The statute gave Cooper a year after said decree in which to present his bill of review. But it is contended that the bill of review constituted a new suit in so far as Cooper sought thereby to review his rights as attaching creditor under his original bill without suing out new attachments and recording anew notice of *lis pendens,* and that his efforts in that respect were abortive and the decree appealed from in his favor therein is erroneous and ought to be reversed. It is undoubtedly true that bills of review, like writs of error and appeal, are for some purposes in the nature of new suits. They are so for the purpose of protecting purchasers under decrees sought to be reviewed for error, between the date of such decree and the filing of a bill of review or suing out of appellate process. We have so decided in the several cases cited and relied on by appellants' counsel, notably the cases of *Dunfee* v. *Childs,* 59 W. Va. 225, 239; *Wingfield* v. *Neall,* 60 W. Va. 106; and *Perkins* v. *Pfalsgraff,* 60 W. Va. 121. If appellants had become purchasers of the lands between the date of said final decree and the date of the filing of Cooper's bill of review, they would undoubtedly be protected by the principles of those cases and others; but they did not They purchased when Cooper's suit was still pending, either in the circuit court or in this court, and they were not purchasers under decrees entered in that suit.

That a bill of review lies to review a decree, for after discovered evidence, even after affirmance here on appeal, is settled law in this state. *Davis Sewing-Machine Co.* v. *Lumbar,* 32 W. Va. 335; *Dunfee* v. *Childs, supra; McLanahan* v.

*Mills,* 73 W. Va. 246.   Such a decree can not be reheard after affirmance here for mere matters of law or fact apparent, but only for after discovered evidence.   As to those errors of law or fact appearing on the former decree, affirmed here, they are *res adjudicata* and can not be again reviewed by bill of review, or otherwise impeached, except for fraud or upon some other ground of equitable jurisdiction.

Such being the settled law relating to bills of review, how shall it be applied to the case at bar?   It is said that the decree appealed from operated to set aside the decree of this court reversing the decree of the lower court and dismissing Cooper's bill, which it is argued is without precedent.   But if Cooper was entitled to his bill of review for evidence discovered after the decree, how could he have the benefits thereof without such result to our decree?   No matter that a bill of review, as is also an appeal, is a new suit for some purposes, already alluded to, it is not so to the extent that it has no connection with nor effect upon the original suit or the decree therein.   The purpose of both proceedings is the same, namely, the correction of errors in a decree or judgment already entered, and it would be a strange doctrine that such purpose could be frustrated by the fiction that such proceedings on error constituted new suits.   *State* v. *Moore,* 77 W. Va. 325, 328.   Certainly reversal of a decree on bill of review or appeal would restore plaintiff to his rights and remedies as against the parties to the suit; and if as to them, why not also as to *pendente lite* purchasers?   In this case, as we hold, appellants stand in the shoes of Upton, except as to any rights in which they are protected by the option contracts pleaded and relied on, which we have already attempted to define.

There are some decisions to the contrary, it seems, but the great weight of authority is that a purchaser after judgment or decree, but while the decree is subject to review or further proceedings thereunder, takes subject thereto.   25 Cyc. 1472, note 2, citing among other cases, *Farmers Bank of Frankford* v. *First National Bank,* (Ind.), 66 N. E. 503.   Such is the law applicable to bills of review or appeals except in the instances observed in our cases of *Dunfee* v. *Childs,* and other cases cited. 25 Cyc. 1473.   As already observed, appellants do not come

87 W. Va.

within the protection of those cases.    As recently decided here, the common-law doctrine of *lis pendens* is that one who purchases from a party pending suit a part or the whole of the subject matter involved in the litigation, takes it subject to the final disposition of the cause and is bound by the decision that may be entered against the party from whom he derived title. *Rardin* v. *Rardin*, 85 W. Va. 145, 102 S. E. 295.    An amendment to the bill, or complaint, after the purchase or the acquisition of other rights *pendente lite* which does not alter the cause of action, does not affect the *lis pendens*, since it relates back to the filing of the original bill.    So the law is stated in 25 Cyc. 1743, and the cases cited in the note thereto.

A bill of review for after discovered "evidence does not change the cause of action; it only seeks to open up the cause to let in the evidence of the facts well pleaded in the original bill.    If a new cause of action was pleaded and relied on, the original bill perhaps would not be notice thereof nor bind a *pendente lite* purchaser.

. One question is presented on appeal which we can not overlook.    Manifestly the attention of the circuit court was not called to the fact that pending the suit 540.5 acres of the land levied on by Cooper was adjudged to belong to Christian Seybolt and not to Upton.    Appellants did not purchase the land from Upton, but subsequently to the judgment in favor of Seybolt, it was purchased by them or one of them from Seybolt; otherwise they would not now be injuriously affected by the error in the decree sustaining Cooper's demurrer.    Their bill on its face presented good ground for relief as to that portion of the land attached and decreed to be sold; and doubtless if the court's attention had been particularly directed to the fact, the demurrer would have been overruled as to that matter and Cooper ruled to answer, as he ought to have been.    However, as the record shows ample property to satisfy Cooper's judgment without the tract of 540.5 acres, it will not likely be necessary for him to pursue it further in the prosecution of this suit.

For the foregoing reasons, we are of opinion to modify the decree so as to overrule Cooper's demurrer to so much of the

bill as sought relief against the sale of the 540.5 acres, and in all other respects to affirm the same.

As Cooper substantially prevails here, he will recover his costs in this court.

*Modified and affirmed.*