No. 33,845

Leslie D. Anderson, Administrator of the Estate of Charles Ericson, Deceased, and Albin J. Ericson, *Appellees,* v. Christine Ericson et al., *Appellants.*

(87 P. 2d 540)

Opinion filed March 4, 1939.

*Hal E. Harlan* and *A. M. Johnston,* both of Manhattan, for the appellants.

*C. A. Kimball, F. R. Smith* and *Gerald F. Smith,* all of Manhattan, and *Raymond E. Smith,* of Marysville, for the appellees.

The opinion of the court was delivered by

Smith, J.: This was a claim in probate court on a promissory note. The probate court allowed the claim. On appeal, it was again allowed by the district court. The appeal is from that judgment.

No pleadings were filed other than the claim to which the note was attached.

On April 30, 1920, Charles E. Ericson and wife owned a farm in Riley county. On that date they entered into a written lease with their son, Albin J. Ericson, whereby they leased the farm to Albin

for a term of five years. The lease contained an option giving Albin the right to purchase the farm at any time during the five years for $11,000. On May 12, 1920, C. E. Ericson acknowledged receipt of $2,000. The language of this receipt is dwelt upon somewhat in the briefs. It is as follows:

"RANDOLPH, KANSAS, May 12, 1920.

"Received of Albin J. Ericson, two thousand ($2,000) dollars to apply on purchase price of the N½ of SW¼ of sec. 15, and S½ of NE¼ and SE¼ of NW¼ of sec. 21, all in twp. 6, range 6, Riley county, Kansas.

"(Signed)     C. E. ERICSON.

"Balance now due as per contract lease $11,000."

This receipt was on a separate sheet from the lease. On April 3, 1926, the claimant paid $1,000 on the contract. Sometime between April 29, 1930, and November 19, 1931, Albin stated to his father that he had offered to pay too much for the real estate and was not going through with the deal. On November 19, 1931, more than a year after the option had expired, Charles E. Ericson and his wife executed a note for $3,000 payable to Albin, due in five years without interest. When the note matured Albin demanded payment.

The will of Charles E. Ericson was admitted to probate on March 5, 1937. Five days later this claim on the $3,000 note was filed. The will spoke of this note, so it is of some interest here. It was as follows:

"ITEM 1. It is my will and I hereby direct that my executor hereinafter named shall, out of my estate, pay all of my just debts, including funeral expenses, as soon as the same can be conveniently done after my decease.

"ITEM 2. Subject to the provisions of item 1 hereof, I give, devise and bequeath to my beloved wife, Christine Ericson, all of the property of which I die seized and possessed, or to which I may be entitled at the time of my decease, she to have the use and benefit thereof, and the rents, issues and profits arising therefrom for and during the full period of her natural life, and I hereby expressly give and grant to her the right to use and dispose of any and all of the personal property during her lifetime if in her opinion the same should be necessary for her support and maintenance.

"ITEM 3. I hereby authorize and direct my executor hereinafter named to pay out of my estate the costs and expenses of the last sickness and funeral expenses of my said wife, Christine Ericson, in the event she survive me.

"ITEM 4. Subject to the foregoing provisions hereof, I give, devise and bequeath to my daughter, Ethel Hawkinson, lot one (1) and the east half (E½) of lot two (2) in block eleven (11) in the townsite of Randolph, Riley county, Kansas, together with all the household goods, furniture and fixtures.

"ITEM 5. I give and bequeath to my son, Albin J. Ericson, the sum of $3,000 and make the same a charge on all the rest, residue and remainder of the property of which I die seized and possessed. I make this bequest for the

purpose of paying to him the sum of $3,000, which he paid me some years ago as part of the purchase price of my farm which I sold to him and for which he failed to make full payment, and by reason thereof, the farm was never conveyed to him. This amount is at this time represented by a note which I have executed payable to him, and this gift and bequest is not intended as any additional advancement over and above said note.

"Item 6. Subject to the gifts, bequests and devises as hereinbefore stated, I do give, devise and bequeath all of the rest, residue and remainder of my property to my son, Albin J. Ericson, and my daughter, Ethel Hawkinson, and my foster daughter, Olive Quick, share and share alike, and I do hereby authorize and direct my executor, hereinafter named, to sell and convey any and all of the real property within two years after the decease of the survivor of myself and my said wife, and to divide the proceeds thereof among the three parties mentioned in this item according to their respective interests therein, and that such sale be made without any order of the probate court with regard thereto, and that prior to said sale said executor shall lease said real property on such terms as he may deem best, and after paying the taxes and necessary expenses in keeping said property in reasonable repair, the balance shall be added to the proceeds of the sale thereof and divided as herein directed."

This will was executed on December 15, 1935. On December 15, 1936, a codicil was executed by testator. It was as follows:

"Item 1. Whereas, since the date of the execution of my said last will the note for $3,000 which is mentioned and described in item 5 of said last will and testament has become by its terms due and payable and my son, Albin J. Ericson, has demanded payment thereof and/or interest thereon at the rate of 6% per annum from maturity and it was my intention and understanding at the time of the execution of my said last will and testament that said note should be paid out of the assets of my estate only in the sum of $3,000 and that said note did not and would not bear any interest, and it is still my intention and I desire that said note be paid only in the sum of $3,000 out of my estate and in the event any payment shall have been made on said note on account of interest and/or principal, then in that event such amounts shall be charged as an advancement to my said son, Albin J. Ericson, and shall upon the distribution of my estate be deducted from the amount represented by the face value of said note, intending hereby that said note shall be paid in full without interest."

The claim on the note was allowed by the probate court, and on appeal to the district court was allowed there. This appeal is by Christine Ericson, the mother of Albin, and the wife of Charles, who was given a life estate in the farm under the will, and by Ethel Hawkinson and Olive Quick, daughter of Charles, and residuary legatees, together with Albin, under the will of Charles.

Their claim in the lower court, and on appeal here, is that there was no consideration for the note and hence it was not a valid debt

of the estate. In view of the record it cannot be disputed that two payments, one for $1,000 and the other for $2,000, were made by Albin to his father. The position of Albin here is that these payments were made by him as a part payment on the purchase price for the place and not to keep the option in force; that when he could not go ahead with the purchase his father paid him back the money he had paid him. This is the position taken by the trial court. The position of the appellant in the lower court and here is that the money was paid on the option; that when Albin could not go ahead with the purchase the father was under no obligation to pay it back, hence the note was given to pay a debt the father did not really owe, so was given without consideration.

In connection with this argument it should be noted that the written lease provided that the rents, covenants and agreements stated by the terms of the lease were the consideration for that instrument. No other payments were provided for in that instrument.

All the parties to this action agree that the lease contained an option contract. The question upon which the trial court decided the action was whether the $3,000 payment was a payment on the option or money left with his father to apply on the purchase price. As it appears to us, the contract in the lease was a contract for the purchase of the farm for $11,000.

The failure of the contract to make time of the essence of the agreement is of no consequence, because time is of the essence of such a contract in any event. See 66 C. J. 502, where it is said:

"Time being of the essence of an option contract, whether or not so expressed, acceptance must be made and conditions performed within the time, if any, limited by the option in order to constitute a contract of sale, but the full time is allowed."

See, also, 66 C. J. 503, where it is said:

"Time being of the essence of an option, it is likewise of the essence of an agreement for the extension of the time for acceptance which must be supported by a consideration and which may be withdrawn before acceptance unless made upon a consideration."

The time for Albin Ericson to complete the purchase of the farm had expired over a year before this note was given. Under such circumstances Albin had no claim on his father for a return of the $3,000. (See 66 C. J. 496; also, 27 R. C. L. 347.) The testimony of the son that the note was a gift, while it may be as the trial court stated, a mere conclusion, still does not require a conclusion that it

was not a gift. On the other hand, the provision in the will of the father with reference to the $3,000 is persuasive toward the opposite view. If the father regarded the note as a binding obligation of his estate it is hard to see why he thought it necessary to bequeath the item of $3,000 to the son. It is clear from the will that the father looked on the $3,000 bequest and the $3,000 note as all a part of the same transaction. It is also clear that he regarded the payment of the $3,000 as a payment on the purchase price of the farm. Indeed, the receipt for the $2,000 payment contained a proviso that it was for payment on the purchase price of the farm.

Since the note was a gift on the part of the father to the son, it cannot be made the basis of a recovery against the estate of the father. See 12 R. C. L. 940, where it is said:

"It is well settled as a broad general rule that a promissory note executed without consideration and intended merely as a gift *inter vivos* to the donee, cannot be made the basis of a recovery either at law or in equity by the donee against the donor or against his estate after his death. This is upon the ground that such a note is a mere promise, and that the gift of the note is the delivery of a promise only and not the thing promised, and a note without consideration, payable out of the estate of the maker after his death, is void. Natural love and affection are not now usually considered as constituting a good consideration so as to validate such a gift, as in the case of a note executed by a parent to a child."

Albin contends that what happened here was that he and his father entered into an agreement whereby the contract to purchase the farm was rescinded by mutual consent. In making this argument it is insisted that the $3,000 was not paid on the purchase price but was simply deposited with the father by Albin against the time when he should be able to complete the purchase. As we have already demonstrated in this opinion, the contract was really a contract to purchase. Since this is true, Albin had no right to have the $3,000 paid back. In *Hillyard v. Banchor*, 85 Kan. 516, 118 Pac. 67, this court held:

"It is a general rule that a purchaser of land who has made an advance payment and then failed to fulfill his contract without default on the part of the vendor cannot recover the amount so paid." (Syl. ¶ 4.)

See, also, *Ketchum v. Evertson* (N. Y.), 13 Johns. 358; *Hansbrough v. Peck*, 72 U. S. 497; *Wensler v. Tilke*, 97 Kan. 567, 155 Pac. 946. In the latter case this court, in dealing with a similar situation, said:

"Did the plaintiffs voluntarily abandon the land and their contract for the purchase of the same? If they did, the changes made in the contract at the time the second contract was signed are immaterial. The evidence clearly shows that the option of complying with the contract was always with the plaintiffs; that the defendant was ready at all times to receive his payments and complete the contract; but that upon the plaintiffs' failure to comply with their contract the defendant insisted on having possession of the premises. The plaintiffs failed to pay the interest, to pay the taxes on the land, and moved away on the request of the defendant that they pay the interest or move off. This shows a voluntary abandonment of the land and of the contract on their part." (p. 569.)

In this case Albin told his father that he was not going through with the contract because the price he paid for the land was too high. This certainly constituted a voluntary abandonment of the contract.

Albin next argues that the moral obligations of his father to pay him back the $3,000 was sufficient consideration for the note. We have examined the authorities cited by him on this argument and do not find them to be in point. Furthermore, it appears that in view of what has been said here the father discharged his moral obligation when he made the provision for payment of the $3,000 in his will. The only loss sustained by Albin was the fact that he is compelled to wait for his money until his mother's life estate is extinguished.

As to the argument of Albin that the note was given by the father to pay a family settlement, it is apparent from this record that there was no controversy between father and son which would require a family settlement.

The judgment of the trial court is reversed, with directions to render judgment for the defendants.