[Civ. No. 799. Fifth Dist. Sept. 29, 1967.]

MARYAN J. VEZALDENOS, Plaintiff and Appellant, v. DAVID KELLER et al., Defendants and Respondents.

DAVID KELLER et al., Plaintiffs and Respondents, v. MARYAN J. VEZALDENOS et al., Defendants and Appellants.

(Consolidated Cases.)

Lee & Hertzer, Hulsey, Beus & Wilson and J. David Hertzer for Plaintiff and Appellant and Defendants and Appellants.

Chargin & Briscoe and Ann M. Chargin for Defendants and Respondents and Plaintiffs and Respondents.

GARGANO, J.—Respondents instituted an action in the Superior Court of San Joaquin County to specifically enforce an option to purchase land owned by appellants Maryan J. Vezaldenos and John K. Vezaldenos. Shortly thereafter appellant Maryan J. Vezaldenos instituted a separate action in the same court seeking to eject respondents from the land and to recover possession thereof. The actions were consolidated for trial and tried by the court sitting without a jury. The trial judge ordered specific enforcement in favor of respondents.

The controversy in both actions centered around an option to purchase contained in a lease executed by appellants in 1956. The facts which gave rise to this controversy, when viewed in the light most favorable to respondents, are substantially as follows:

Appellants owned farm land in San Joaquin County located along French Camp Road, a public road. A nearly rectangular pit encompassing between five and six acres had been excavated on this farm land several years prior to the transactions involved here. A strip of land approximately 39 feet wide and 351 feet long runs between the northeastern rim of the pit and French Camp Road. This strip of land provides the only access to the pit from the road.

In January 1956, respondents contacted appellants and offered to lease their pit. Respondents were in the trucking business and wanted to use the pit for the storage of rice hulls. Lease terms were discussed at this meeting which was attended by appellants' son, George Vezaldenos, who participated in the discussions; George Vezaldenos helped his parents manage and operate their farm. On January 19, 1956, (approximately one week later) respondents prepared a lease and took it to the Vezaldenos farm. The appellants and their son, George Vezaldenos, signed the lease on the same day. This lease reads as follows:

LEASE

"On this day of January 19, 1956, Mr. J. K. Vezaldenos, agrees to lease for the amount of one hundred dollars ($100.00), a year for a five (5) year period, to Keller Bros., Rt. 2. Box 20, Galt, California and Battaglia Bros., Rt. 3, Box 317 C, Lodi, California. a five (5) more or less acre pit located on the French Camp Road, San Joaquin County. Said pit has a one hundred-fifty (150) foot frontage.

This is a five (5) year lease with an option of five (5) more years to lease property after lease expires or option to buy said pit for one hundred dollars ($100.00) per acre.

Rent to be paid on the first day of February of every year, beginning, 1 February 1956, until lease expires."

Within two weeks after appellants signed the lease respondents took possession of the pit and thereafter used it continuously under the terms of their lease until December 1960 or January 1961. At the same time they also took possession of the easterly 150 feet of the strip of land between the pit and French Camp Road and used it during the entire period for access to the pit and for the location of a building.

In December 1960 or January 1961, respondents informed appellants' son, George Vezaldenos, that they wished to exercise their option to purchase the pit for the purchase price of $100 per acre as provided in the option. George Vezaldenos refused respondents declaring that ''he'' would not sell the property and that ''he'' would not renew the lease at the same rental. Respondents then hired a surveyor to survey the pit and the frontage area and to prepare a land description. On January 31, 1961, respondents again notified appellants, this time in writing, of their intention to exercise the option. Respondents handed the written notice, the surveyor's land description and a check in the amount of $600 to Maryan J. Vezaldenos.

The land description included the entire strip of land between the northeastern rim of the pit and French Camp Road (the entire 351-foot frontage). The description also embraced a total of approximately 25 feet of additional land overlapping the northwestern and southeastern sides of the pit. Because the pit edges were jagged and difficult to describe, the surveyor apparently included the additional 25 feet in order to facilitate the preparation of the description. Appellants promptly returned respondents' check.

Appellants' numerous arguments for reversal are sometimes mere quarrels with the sufficiency of the evidence to support the trial court's findings and conclusions. ██ Thus, to avoid repetition, we deem it advisable to point out at the very outset (as we must often do in appeals of this nature) that an appellate court does not weigh the evidence, judge the credibility of witnesses nor resolve conflicts in the evidence, but it will indulge all intendments and reasonable inferences which favor sustaining the trier of fact (*Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557]; *Overton* v. *Vita-Food Corp.,* 94 Cal.App.2d 367 [210 P.2d 757]). The test on appeal is simply whether there is substantial evidence to support the findings of the trial court. In making this determination this court must accept all evidence most favorable to respondent as true and reject all evidence unfavorable to respondent as not having sufficient veracity to be accepted by the trier of the fact (*Estate of Teel,* 25 Cal.2d 520 [154 P.2d 384]).

. We shall consider appellants' contentions for reversal with these broad appellate principles in mind. Appellants contend:

I. The option was not an absolute option to purchase;

rather, it was an option conditional upon appellants' intent to sell.

II. The option to purchase appellants' pit was unenforceable because its terms were uncertain and ambiguous.

III. The respondents never effectively exercised the option either orally or in writing.

IV. The option was unenforceable because appellants gave it under the influence of a mistake of fact.

V. The option price was manifestly unfair and unconscionable; the court erred in not determining the fairness, justness, and adequacy of the consideration for the land.

VI.. The description of the land subject to specific performance, as stated in the court's finding of fact and incorporated into the judgment granting speific performance, is erroneous.

# I

Appellants base their contention that respondents did not have an absolute option to buy the pit primarily on the argument that the option is ambiguous in this respect and should have been construed strongly against respondents who, by drafting the lease, caused the ambiguity to exist. They assert that, by changing the last word in the third sentence of the option to read "year" instead of "acre" and by placing the words "or option to buy said pit" at the end of the same sentence in order to make it grammatically correct, the option should be read as follows: "This is a five (5) year lease with an option of five (5) more years to lease property after lease expires for one hundred dollars ($100.00) per year or option to buy said pit." They also allege that this is the way the option was explained by respondents and understood by appellants.

The evidence shows that the parties orally discussed the terms under which appellants' property would be leased to respondents and reduced their oral agreements and understandings to a written lease. The lease, although not artfully or skillfully drawn, is plain on its face, and unequivocally provides that the lessees shall have the absolute right to renew the lease for an additional 5-year period or to purchase the property for $100 per acre. The instrument becomes ambiguous only when the word "acre" is substituted for the word "year." Thus, it is manifest that if the sentence is modified as appellants suggest it simply changes its meaning in order to conform with what they now claim they understood and intended; such modification of the terms of a provision in a

contract which is otherwise plain on its face would violate the parol evidence rule.[1] (Civ. Code § 1625; *Barham* v. *Barham,* 33 Cal.2d 416 [202 P.2d 289].)

## II

(1) Appellants apparently assert that the respondents' option described the land in terms too general for precise, accurate identification without resorting to parol evidence. Accordingly, they also apparently conclude that the option was uncertain and ambiguous and therefore unenforceable. We do not agree with this contention.

It is undisputed that appellants owned farm land in San Joaquin County along French Camp Road in January 1956 when they signed respondents' lease. It is also undisputed that a 5-acre pit had been excavated on this farm land a few years earlier and was located in proximity to the road. In fact, it was the only pit on appellants' land and the only pit of its size within the entire surrounding area. Thus, it is manifest that the description of the property covered by the lease, though couched in general terms, corresponds with an identifiable estate owned by appellants. It is also manifest that it was possible, with the assistance of external evidence, for the trial court to locate the pit and to fix its boundaries to the exclusion of all other property owned by appellants.

It is the rule that even a description in general terms which actually corresponds with an estate owned by a contracting party is sufficient to support a decree for specific performance where there is but one tract owned by the vendor which will answer the description (*Johnson* v. *Lehtonen,* 151 Cal.App.2d 579 [312 P.2d 35]; 49 Am.Jur., Statute of Frauds, § 348, p. 656). In addition, it is also the rule that a description of real property is sufficient even though the terms may be abstract and of a general nature, if with the assistance of external evidence the description, without being contradicted or added to, can be connected with and applied to the very property intended, to the exclusion of all other property (49 Am.Jur., *supra,* Statute of Frauds, § 348, p. 656). Moreover, although parol evidence cannot be applied to effect an original location of property or to supply the required description thereof which the parties failed to

[1]Significantly, George Vezaldenos was permitted to testify without objection that respondents explained the option to mean that appellants did not have to sell their property unless they wanted to. Even so, there was substantial evidence for a contrary finding by the trial court and we are bound by this determination.

provide, parol evidence may be used to connect a sufficient description in the memorandum to its actual location on the ground (*Craig* v. *Zelian*, 137 Cal. 105 [69 P. 853], 23 Cal. Jur.2d, Statute of Frauds, § 114, p. 374).

(2) Appellants argue next that the option was uncertain as to whether the land between the pit and French Camp Road was to be included and is unenforceable for this reason, if for no other. Appellants assert that when respondents had the land surveyed they apparently thought the "frontage" included all of the land between the pit and French Camp Road; respondents later admitted (when they amended their complaint) that it encompassed only the easterly 150 feet. In addition, appellants point out that even the trial judge was so confused that he included the wrong description in his findings of fact and conclusions of law.

We do not agree that the option is uncertain in regard to the inclusion of a portion of the strip between the pit and French Camp Road. The lease describes the leased property as ". . . a five (5) more or less acre pit located on the French Camp Road, San Joaquin County. Said pit has a one hundred-fifty (150) foot frontage." "Frontage" expresses a relationship between the pit and something else; the only antecedent is "French Camp Road." Hence, it is clear that the lease included 150 feet of the strip between the pit and the road. In other words, it is reasonably clear that the term "pit" as used in the lease and option to purchase was simply a reference to the property covered by the agreement.

Furthermore, even if the option is ambiguous as to the inclusion of the 150-foot strip, uncontradicted and unchallenged evidence shows the strip was necessary for access to the pit proper. Because of this evidence, a trial court finding that the 150-foot strip was not included would be untenable. It would be unreasonable to believe that appellants intended to give respondents the option to buy the pit without access rights of any kind, particularly when the lease stated that it had a 150-foot frontage.[2]

Moreover, we conclude that the location of the 150-

[2]An ambiguity in the agreement as to whether the parties intended to include the 150-foot frontage within the terms of the option is to be distinguished from an ambiguity in the description of the property. In other words, under the parol evidence rule, if the court found that the option was not clear as to whether the parties intended to include the 150-foot frontage within the terms of the option (aside from any question as to the certainty of its description), extrinsic evidence would be admissible in order to explain the ambiguity. (*Wachs* v. *Wachs*, 11 Cal.2d 322 [79 P.2d 1085].)

foot frontage was ascertainable with reasonable certainty without resorting to parol evidence. As we have stated, the pit was bounded on the north by a strip of land 39 feet wide which faced French Camp Road. This strip of land is the only land owned by appellants which could qualify as the frontage referred to in the leasing agreement. In addition, respondents took possession of the easterly 150 feet of this strip when they took possession of the pit and improved the strip and used it for almost five years with the knowledge and tacit approval of the appellants. Hence, even if it is assumed that the location of the 150-foot frontage referred to in the lease was somewhat uncertain when the lease was executed, respondents' acts of possession had fixed the location by the time the option was exercised.

(3) Thirdly, appellants challenge the option's enforceability on the grounds the method and terms of payment were not stated in the option. The lease simply provided that respondents had the option to buy appellants' pit for $100 per acre; it did not specify the time of payment, nor did it indicate whether the parties contemplated cash or terms.

It is the general rule that an agreement for the sale of land which leaves open the time and terms of payment for future negotiation is incomplete and unenforcable in equity (*Roberts* v. *Lebrain,* 113 Cal.App.2d 712 [248 P.2d 810]). However, it is also the rule that if the option specifies *no time* for payment, it will be implied that the optionee must pay within a reasonable time. Moreover, if the contract does not stipulate the payment terms or indicate that term payments are contemplated by the parties, it is also implied that the optionee must pay in cash (49 Am.Jur., Specific Performance, § 32, p. 45). Under these logical and reasonable rules of construction the purchase price for appellants' property was payable in cash within a reasonable time after the option was exercised.

The cases cited by appellants for the contrary position are distinguishable. For example, in *Roberts* v. *Lebrain, supra,* 113 Cal.App.2d 712, the contract called for a down payment and obviously left open for future negotiation the terms for the payment of the balance. Accordingly, the court held that it was too uncertain for specific performance.

### III

Appellants' attack on the trial court's express finding that respondents orally notified appellants "that they [the respon-

dents] exercised the option to purchase the land'' is two-fold. They argue (1) the oral notification did not amount to the exercise of the option because it was equivocal and indefinite, and (2) it was ineffective because respondents orally notified only George Vezaldenos who owned no interest in the land.

(1) Admittedly, the testimony of respondent Battaglia (the testimony to which appellants refer) indicates that the conversation between respondents and George Vezaldenos regarding the exercise of their option was vague and equivocal. However, respondent Keller testified as follows:

''A. Yes, in 1960, December of 1960 we wanted to exercise that option to buy.

Q. What did you do, if anything?

A. We went to the Vezaldenos family.

Q. What did you say or to whom did you talk, what was done?

A. We talked to George.

Q. And what occurred, what did you say to him?

A. We told him we wanted to exercise our option and he said nothing doing, that he wouldn't sell and he wanted an outrageous price per month to lease it.''

Hence, the court had substantial evidence to support a finding that respondents orally exercised their option to purchase appellants' land. ██ It is the rule that an option to purchase realty may be orally exercised unless it provides otherwise. It is also the rule that a tender of the purchase price is not an essential requirement (*Murfee* v. *Porter,* 96 Cal. App.2d 9 [214 P.2d 543]). In fact, it is almost axiomatic that no tender is necessary when the optionor emphatically informs the optionee that he will not sell; the law does not require the performance of an idle act.

(2) Appellants' assertion that the oral exercise of respondents' option was ineffective because respondents spoke only to George Vezaldenos who claimed no interest in the property and who had not been authorized in writing by his parents to create a valid land sale contract binding on them is without substance. The court had substantial evidence to support a finding that Mr. and Mrs. Vezaldenos delegated actual authority to George to represent them during all negotiations affecting their land, and to accept all notices or other correspondence pertaining thereto. George was assisting his parents in the management and operation of the farm when the lease was negotiated; he actively participated in the discussion pertain-

ing to the lease terms. Thereafter, Mr. and Mrs. Vezaldenos consistently referred respondents to George Vezaldenos on all matters affecting the property. Mr. and Mrs. Vezaldenos told appellants that he (George) would make the decisions regarding the property. It is settled that the *equal dignities rule*, requiring the authority of an agent to be in writing, does not apply to the receipt of notices by the agent or similar acts which do not amount to the making of a contract by the agent affecting his principal's real property (2 Cal.Jur.2d, Agency, § 72, p. 727). Here all three members of the Vezaldenos family joined in granting the option; formation of a contract to sell depended only on respondents' action.

 In any event, the court had substantial evidence to support a finding that appellants not only conferred actual or ostensible authority on their son to deal with their property, but that they clothed him with indicia of ownership as well. He signed the lease as a lessor and in appellants' presence made statements indicating ownership. Under these circumstances appellants were estopped to deny that their agent's authority was not in writing (2 Cal.Jur.2d, Agency, § 74, p. 730).

 Apart from the oral exercise, the court expressly found that respondents effectively exercised this option in writing. We also conclude that there was substantial evidence to support this finding.

First, there was reasonable basis for the court to find that the lease term did not expire until midnight of January 31, 1961. Although the lease was dated January 18, 1956, the rental was payable annually commencing February 1, 1956, and the court could reasonably conclude that the term commenced at that time. Thus, the court had substantial evidence to support a finding that the term had not expired when respondents served written notice on appellant Maryan Vezaldenos on January 31, 1961.

 Second, the court had a reasonable basis to infer that the option could be exercised at any time prior to the expiration of the term. Respondents were given the option to either renew the lease or to purchase the property. This obviously meant that they could defer their decision until the end of the term.

 Third, the lease included respondents' option. Apparently the appellants gave the option with the lease as

part of the consideration for respondents' payments. Thus, the option was irrevocable during the term of the lease.[3]

 Fourth, even if it is assumed that the option was revocable, there was substantial evidence for the court to find that it had not been effectively revoked prior to January 31, 1961, when respondents exercised it in writing. Moreover, appellants take an inconsistent position here on George Vezaldenos' authority; if George Vezaldenos did not have the authority to accept respondents' oral notification of their intention to exercise the option, it follows that he did not have the authority to terminate the option. The record does not indicate that appellants ever communicated any other notice of termination to respondents.

 Fifth, although the written notice which respondents served on appellant Maryan Vezaldenos contained an erroneous description, there was substantial evidence for the court to find that the error occurred as a result of an inadvertent error made by respondents' surveyor which did not mislead appellants. Moreover, since the exercise of an absolute irrevocable option is merely the election of the optionee to purchase the property, the acceptance of the optionor is not required in order to make the exercise effective. Finally, the court had substantial evidence to find that appellants would have rejected respondents' check regardless of the description error. Thus, the inadvertent error in description was immaterial.

## IV

Appellants' statement that an option for the sale of real property given under the influence of a mistake is unenforceable is an accurate expression of the law. However, the trial court resolved the issue of mistake against appellants in light of substantial evidence to support its decision. Consequently, no further comment on this point is necessary.

---

[3] The general rule is stated in Corbin on Contracts, § 266, pp. 539-540, as follows: ''Option to Sell, to Buy or to Lease

''An option to buy or sell is frequently given as a part of a larger contract with other purposes; and a consideration sufficient to make the option binding and irrevocable may be found in the consideration that the optionee gives in that larger contract. Thus, suppose a lease of land in which the lessee is given an option to buy at a stated price conditional on notice before termination of the lease. The promise to pay rent is the consideration both for the lessor's covenants as lessor and for his promise to sell; it is sufficient to make all the promises enforceable that are given in return for it, and the option is not revocable.''

## V

In support of their position that respondents' option to purchase their land was unjust and that the purchase price was inadequate, appellants rely on the testimony of the real estate broker, John Schierz, who testified that the value of the pit in 1956 was about $500 an acre. Appellants further argue that this witness was the only witness that testified as to the value of the property when the option was made. Moreover, they bolster their position by pointing out that appellants John and Maryan Vezaldenos were elderly farmers (apparently unaware of the value of their land) and respondents were experienced business men.

Significantly, respondents substantially impeached the testimony of Mr. Schierz, Conceivably, the court entirely rejected his opinion as to the value of the land. The cross-examination disclosed that Mr. Schierz had acquired a real estate broker's license in 1955, only one year before the pit was leased to respondents. Moreover, he was not an accredited appraiser and he did not own property in the area in 1955 and 1961. In fact, he did not even work for a firm that made sales in that area in 1956 and knew of no pits in the area which had been sold at that time. ■■■ It is the rule that the trier of fact may believe or disbelieve all or any part of a witness' testimony, although uncontradicted, as long as the trier does not act arbitrarily and had a rational basis for his conclusion (19 Cal.Jur.2d, Evidence, § 487, pp. 254-255).

■■■ Appellants correctly contend, however, that under Civil Code section 3391 respondents had the affirmative burden of showing that when the option was made it was fair and just,[4] and that the purchase price of $100 per acre for their land was adequate consideration therefor (*Haddock* v. *Knapp*, 171 Cal. 59 [151 P. 1140]; *Porter* v. *Stockdale*, 32 Cal.App. 792 [164 P. 33]; *Schwartz* v. *Shapiro*, 229 Cal.App.2d 238 [40 Cal.Rptr. 189]). ■■■ They further correctly contend that in an action for specific performance the trial court is required to make express findings on the adequacy of the consideration and the fairness and justness of the contract (*Foley* v. *Cowan*, 80 Cal.App.2d 70 [181 P.2d 410]; *Eichholtz* v. *Nicoll*, 66 Cal.App.2d 67 [151 P.2d 664]). Thus, appellants allege that the judgment is defective regarding consideration

---

[4] It is clear that the fairness, adequacy and reasonableness of the option is determined at the time the option is signed (*Stough* v. *Hanson*, 46 Cal.App.2d 504 [116 P.2d 77]).

because respondents failed to make the necessary showing and the court failed to make the essential findings of fact.

Admittedly, respondents' evidence on the value of the land is not persuasive; arguably, it does not meet the substantial evidence test. Respondents offered no positive evidence as to the value of the property in 1956, but relied primarily on inferences resulting from their description of its condition.[5] In addition, the trial judge's finding on the adequacy of consideration is vague and uncertain. He simply found that all material allegations in respondents' complaint are true. It is only inferable from his finding that the land was reasonably worth the price extracted by appellants as alleged in Paragraph VI of respondents' first amended complaint. He did not expressly or impliedly find that the contract of sale was fair and just as to these appellants. And in the light of the evidence presented by respondents on this issue, it does not clearly appear that if these findings had been made they would necessarily have been adverse to appellants. Accordingly, we conclude that the court's findings of fact are incomplete and that the judgment in this respect is uncertain and must be reversed. As stated in *Foley* v. *Cowan, supra,* 80 Cal.App.2d 70, 74: "It is the law in this jurisdiction that in an action for specific performance plaintiff must allege and prove facts from which the court may determine that the contract was based upon an adequate consideration and was just and reasonable to the party to be charged, and also that where these matters are in issue they must be covered by findings in order to justify a decree enforcing the agreement."

## VI

We conclude that the only land subject to specific performance under respondents' contract of sale is the pit itself, together with the frontage to French Camp Road consisting of the easterly 150 feet of the frontage strip to which we have heretofore referred. Thus, respondents' final contention that the court erroneously described the land subject to specific performance in its findings of fact is meritorious. The court's description includes the entire strip of land which lies between the northeastern rim of the pit and French Camp Road instead of the easterly 150 feet thereof.

---

[5]Respondent Battaglia testified that the pit was in poor condition when it was leased in 1956 and had to be bulldozed and leveled at considerable expense before it could be used. Specifically, he testified that the land within the pit had not been cultivated or used for any purpose from the time that it was excavated, and that "it was all mounds and water and young trees were growing in there like a forest . . . ."

The court's description also apparently includes 25 additional feet to the northwest and southeast sides of the pit, without any indication that this additional footage is absolutely essential in order to describe the boundaries of the pit.

For the foregoing reasons, the judgment is reversed and the cause is remanded to the trial court with directions to (1) correct its findings of fact with reference to the amount of land subject to specific performance, consistent with the views expressed herein and (2) to determine, on the basis of the evidence previously presented and such additional evidence as may be presented by the parties, whether the option appellants gave respondents under the leasing agreement of January 18, 1956, was fair and just, and whether the purchase price of $100 per acre for appellants' land was adequate consideration when the option agreement was made, and to make such findings and conclusions of law and enter such judgment, consistent with the views expressed herein, as said court shall determine necessary and proper from the evidence.

Conley, P. J., and Stone, J., concurred.