No. 47,977

Frank E. Loose and Bessie Loose, *Appellants,* v. E. J. Brubacher,
Sr., and Lucille Brubacher, *Appellees.*

(549 P. 2d 991)

Opinion filed
May 8, 1976.

*Arthur L. Sparks,* of Wichita, argued the cause and was on the brief for
the appellants.

*C. Fred Ice,* of Newton, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This appeal is from an order granting summary judgment to defendants, E. J. Brubacher, Sr. and Lucille Brubacher. The plaintiffs, Frank E. Loose and Bessie Loose, filed the action to obtain specific performance of an option agreement to purchase real estate in Harvey County, Kansas. The trial court on the basis of the pleadings and interrogatories held that plaintiffs failed to properly exercise the option within the time limited by the agreement. The plaintiffs appeal. They contend that the case was not ripe for summary judgment.

Appellees have raised a jurisdictional question which merits examination before the substantive issues on appeal are reviewed. Appellees contend that this appeal must be dismissed because it was not timely filed. They contend that no appeal was perfected for more than thirty days after the trial court entered summary judgment. They further argue that although appellants filed a timely motion for new trial the motion for new trial was not necessary and did not extend the time for appeal prescribed in K. S. A. 60-2103.

Appellees rely on *Stock v. Union Pacific Railroad Co.,* 183 Kan. 659, 331 P. 2d 549. In *Stock* under our former code of civil procedure it was held that a motion for new trial was not necessary to review an order sustaining a demurrer to plaintiffs' evidence, and filing such a motion did not extend the time for appeal.

The decision in *Stock* was based on G. S. 1949, 60-3309, which provided that an appeal must be filed within two months from the date of judgment from which appeal is taken. No provision for termination of the period allowed for appeal was contained in that former statute. Our present code of civil procedure provides in part:

"When an appeal is permitted by law from a district court to the supreme court, the time within which an appeal may be taken shall be thirty (30) days from the entry of the judgment, . . . The running of the time for appeal is terminated by a timely motion made pursuant to any of the rules hereinafter enumerated, and the full time for appeal fixed in this subsection commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: . . . or granting or denying a motion under section 60-259 to alter or amend the judgment; or denying a motion for new trial under section 60-259." (K. S. A. 60-2103 [a].)

K. S. A. 1975 Supp. 60-259 provides that a motion for new trial or a motion to alter or amend the judgment may be filed within ten days of the entry of judgment to seek, among other relief, correction of erroneous rulings of the court. The statute does not require the filing of a motion for new trial as a condition of appellate review. It allows such motions in order that the trial court might review its decision and correct errors before the controversy is submitted to the appellate process. (See Gard, Code of Civil Procedure, § 60-259.)

On September 23, 1974, the appellants filed their motion for new trial asking the court to reconsider its ruling on the summary judgment. The motion was heard and denied on December 4, 1974. Appeal was filed on January 3, 1975. Pursuant to K. S. A. 60-2103 (a) a timely motion for new trial suspends the time for appeal until the motion is acted on. A notice of appeal served and filed within the thirty days after the denial of a motion for new trial is timely. (See Ten Eyck v. Harp, 197 Kan. 529, 533, 419 P. 2d 922.) This appeal was timely filed.

We turn to the substantive issues raised.

Defendants allege in their answer that plaintiffs failed to exercise their option to purchase within the time limited in the agreement, that plaintiffs waived or forfeited their rights under the option and that it would be inequitable to require specific performance because of equitable considerations. In addition to the answer they filed a counterclaim for recovery of money in which they allege money is due them by reason of plaintiffs' actions and misrepresentations. Although the court summarily denied plaintiffs' action for specific performance it set defendants' counterclaim for trial at a later undetermined date. We are not concerned with the counterclaim.

The primary issue presented on appeal is whether the plaintiffs-appellants were required by the terms of the option agreement to tender the entire purchase price within the time limited in the agreement for exercising the option. The trial court held that they were.

The written option agreement signed by the parties on September 1, 1971, in pertinent part provides:

". . . In the event that Brubacher acquires merchantable title in and to the following-described real estate located in Harvey County, Kansas, to-wit: [Here the legal description of the 33 acres of land involved in this action is set forth in full.] on or before the 1st day of September, 1973, Brubacher does hereby give and grant to Loose an option to purchase said above-

described real estate for the sum of $23,000 on or before the 1st day of September, 1973.

"Provided, however, that Loose shall pay to Brubacher, in addition to the sum of $23,000, the sum of $53.33 per month from the time that Brubacher obtains merchantable title until said option is exercised."

It should be noted that under the allegations of the petition and the exhibits attached the parties had previously entered into an agreement for a sale of this land from Mr. and Mrs. Loose, plaintiffs, to Mr. and Mrs. Brubacher, defendants. According to allegations in the answer the real estate at that time was heavily encumbered and a suit by the Seneca National Bank was pending against Mr. Loose to recover over $73,000.00 on a corporate indebtedness previously guaranteed by Mr. Loose. The agreement of sale and a warranty deed was executed on July 13, 1971. The deed to the Brubachers was recorded on April 28, 1972. The record does not disclose when title of the Brubachers became merchantable.

At any rate on September 1, 1971, before the deed was recorded and before the title became merchantable, two separate instruments were executed by the parties. The first instrument was the option to purchase which gave rise to this action and the second was a lease of the premises to the Brubachers. At the time these instruments were executed the Brubachers hopefully were to obtain merchantable title at some time in the future. The lease was for an initial term of one year ending September 1, 1972, with a right to renew the lease for an additional term of one year ending September 1, 1973. This was the date the option to purchase was to terminate. The lease provided for the payment of rent by the Brubachers at the rate of $50.00 per month and provided that Loose should retain the use of the basement of the house located on the premises and the use of dog pens. The use of the dog pens was limited to a two month period from the date of the lease. The lease further provided that the Brubachers were not to make alterations on the premises without the consent of Loose. However, the Brubachers allege in their answer that they renovated the bathroom in the house and made other improvements believing the option had been forfeited.

The option agreement further provided that if the Brubachers obtained merchantable title to the property and Loose exercised his option to purchase prior to September 1, 1973, that the Brubachers had a right to continue to occupy the premises until September 1, 1973.

According to the allegations of the answer the $23,000.00 consideration to be paid by the Brubachers was to be used to pay off mortgages on the premises. The Brubachers further allege this amount was insufficient for that purpose and that they were required to pay additional sums to obtain merchantable title. As previously stated the record presented to this court does not disclose the date all liens against the land were released.

At any rate from the pleadings and exhibits it appears that the Brubachers admit receiving a letter from plaintiffs' attorney on August 29, 1973, by certified mail, notifying them as follows:

"Dr. Frank E. Loose is presently in the hospital here in Wichita. As his attorney with full power to represent him, he has asked that I notify you both of his intention to repurchase the property described in the Option To Purchase agreement executed by you with Dr. and Mrs. Loose on September 1, 1971.

"A copy of this agreement is enclosed indicating the intention to repurchase is to be made prior to September 1, 1973, hence this formal notification. Dr. Loose has stated that he will contact you immediately upon his release from the hospital for the purpose of a full accounting in respect to specific requirements of the agreement."

The Brubachers further admit in their answer that six days after receipt of the letter they met with Mr. Loose in Newton, Kansas, concerning this real estate. They deny plaintiffs' allegations that they ". . . repudiated said agreement and refused to perform their obligations under said agreement." They further deny ". . . that plaintiffs were ready, willing and able to purchase said property according to the contract. . . ."

So much for the factual background; we turn to some general principles of law governing options to purchase. It has been said that although an option to purchase is usually described as a contract, it is evident that it is not such until accepted by the optionee, for, until that time, it is only a continuing offer to sell and convey at the price and upon the conditions specified. The optionor is bound to keep the offer open and available in accordance with its terms, but its acceptance rests within the discretion of the optionee. (1A Corbin on Contracts [1963], § 264, p. 509.)

Just as in the case of other offers the optionor can prescribe any mode of acceptance he desires and can make his offered promise to sell conditional upon any facts and performances he pleases. The election to exercise an option must be made in the manner specified in the option agreement. In determining the meaning of provisions of an option with respect to the mode of acceptance the court should

ascertain the intent of the parties in light of the language used and the surrounding circumstances. (77 Am. Jur. 2d, Vendor and Purchaser, § 40, p. 219; and 91 C. J. S., Vendor & Purchaser, § 10 [c], p. 856.)

In *Reger v. Sours*, 181 Kan. 423, 311 P. 2d 996, this court states:

". . . Where the contract is silent on the subject of the manner in which an option is to be exercised, no particular form or notice is essential. All that is required is that the lessee [optionee] notify the lessor [optionor] prior to the date of the expiration of the option of his decision to exercise it. (51 C. J. S., Landlord and Tenant, § 82b, p. 640.)

"Moreover, in the absence of a provision so specifying, the lessee [optionee] need not make a tender with his notice to exercise the option but has a reasonable time thereafter within which to pay the money and complete the deal. (51 C. J. S., Landlord and Tenant, § 83, p. 643.)" (p. 427.)

Payment or tender of the contract price is not essential to acceptance unless the option agreement makes it a condition precedent to or a part of or necessary to the exercise of the option. In such a case payment may be made within a reasonable time after acceptance. (77 Am. Jur. 2d, *supra*, § 44, pp. 226, 227; 91 C. J. S., *supra*, § 10 (*c*) (2), p. 857.)

Time has been held to be of the essence in an option agreement whether or not so expressed and the optionee must accept during the time specified in order to bind the optionor in a contract of sale. (*Shotzman v. Ward*, 172 Kan. 272, 239 P. 2d 935; *Anderson v. Ericson*, 149 Kan. 270, 87 P. 2d 540.)

In the present case there was no express stipulation as to the manner of exercise of the option. The agreement simply provided that appellants had the right to purchase the property prior to September 1, 1973, for $23,000.00 plus an additional sum of $53.33 per month for the time appellees held merchantable title to the property. Where an option agreement speaks of "purchase" within a specified time, without reference to notice or payment by the option-holder, courts have disagreed on the question of whether tender or payment of the option price is required to exercise the option. Some courts have held that this type of option can be exercised only by tender of the stipulated price. On the other hand a majority of jurisdictions including Kansas have held that notice of an intent to exercise an option is sufficient to bind the optionor. (*Reger v. Sours*, supra [Kan. 1957]; *Vezaldenos v. Keller*, 254 Cal. App. 2d 816, 62 Cal. Rptr. 808; *Shull v. Sexton*, 154 Colo. 311, 390 P. 2d 313; *Kottler v. Martin*, 241 N. C. 369, 85 S. E. 2d 314; *Catsman v. Eister*, 8 Mich. App. 563, 155 N. W. 2d 203; *Killiam v.*

*Tenney,* 229 Or. 134, 366 P. 2d 739; *Duprey v. Donahoe,* 52 Wash. 2d 129, 323 P. 2d 903.)

It has been said that courts are likely to interpret the agreement in such a way that the contract will be held bilateral after notice of acceptance. In such cases notice of acceptance is operative without any tender of the price and this is true even though tender may still be a condtion of the duty to execute a conveyance. (1A Corbin, *supra,* pp. 514, 515.)

Courts have quite generally held that tender is not required to exercise an option where the purchase price is not definitely fixed and can be determined only after negotiations between the parties. In *Northern Illinois Coal Corp. v. Cryder,* 361 Ill. 274, 197 N. E. 750, 101 A. L. R. 1420, an option to assume a mortgage of $21,000.00 on certain property contained a provision that if any part of the balance of the encumbrance had been satisfied, the optionee would pay the optionors the difference between $21,000.00 and amount of the mortgage remaining at the time the option was exercised. Under these circumstances the court held that notice of exercise of the option within the time provided was sufficient and tender of the purchase price was unnecessary. That court held:

". . . The tender of the purchase price was not made a condition precedent by the option contract. Time was the essence of the option but was not of the essence of the performance of the contract. The delivery of the deed and the payment of the purchase price were dependent covenants which were to be fulfilled concurrently. [Citations omitted.] It follows that the contract was to be performed within a reasonable time after notice of its acceptance." (361 Ill. at pp. 285, 286.)

The circumstances in *Cryder* are similar to those in the present case. Here the exact purchase price could not be determined from the provisions of the option agreement. The price in part was dependent upon the length of time appellees held merchantable title to the land which could be determined by negotiation between the parties after appellants notified appellees that they intended to exercise the option.

Appellees cite *Bras v. Sheffield,* 49 Kan. 702, 31 Pac. 306, which they contend provides authority for the proposition that tender of payment within the option time is required to bind an optionee. In *Bras v. Sheffield,* supra, this court states:

"Where the owner of land leases it for a period of five years at a stipulated annual rental, and the contract of lease contains a stipulation that the renters shall have the right, at the expiration of the lease, to purchase the premises, if they shall so elect, at a fixed price, there is no completed sale, nor do the renters acquire any estate in the land beyond the leasehold in-

terest until they have elected to accept the offer and have paid or tendered the purchase-price stipulated in the contract." (Syl.)

A review of that case discloses the optionee failed to give notice of his intent to exercise the option and to accept the offer contained therein. For that reason no bilateral contract for the sale of the property existed and tender of the purchase price was not the decisive issue in the case.

Appellees contend that time was of the essence in tendering the purchase price and they point to the holding in *Anderson v. Ericson,* supra, in support thereof. That case holds that time is of the essence in exercising an option to purchase. However, as previously pointed out, it may not be necessary to tender payment within the time limited. The option is an offer to sell and is limited to the period specified in the option. Acceptance of the offer to sell must be exercised in accordance with the terms of the offer, including the time limitation. This does not require that the option be exercised, title papers be examined, the purchase price be paid and the sale be closed within the option period, unless these requirements are so specified in the option agreement.

We believe a reasonable construction of the option agreement in this case, based upon the apparent intention of the parties when the agreement was entered into, requires the court to apply the following rule. When an option to purchase real estate specifies a definite time within which the option must be exercised but sets an indefinite amount as the purchase price which must be determined in part by debits or credits arising after the option agreement is entered into, notice of intent to exercise the option is sufficient without a tender of payment unless the option agreement contains a specific provision requiring determination of the amount and tender therof before termination date.

In the present case the plaintiff was to pay for the purchase of this property the sum of $23,000.00 plus an additional sum equal to $53.33 per month from the time that defendants obtained merchantable title until the option was exercised. The option agreement set a definite time within which the option must be exercised but the amount necessary to exercise it was indefinite and depended on future events. There were no specific provisions as to the manner in which the option was to be exercised or which required a determination of the amount and tender before September 1, 1973. The notice of intention to repurchase the land received by defendants on August 29, 1973, was within proper time and the court's

order entering summary judgment in favor of defendants was in error.

Our holding in this regard does not mean that plaintiffs are entitled to specific performance as a matter of law. The notice of the intention to exercise the option was given within the time required. However, specific performance is an equitable remedy. Any decree, granting or refusing, specific performance must depend upon the facts and circumstances disclosed by the admitted facts and the testimony at trial. The plaintiff must show not only that he gave notice within the time specified but also that he was ready, willing and able to pay the amount required within a reasonable time thereafter. Plaintiffs allege they met with the defendants for that purpose within six days after notice. They further allege they were willing and able to pay the amount to be determined but that the defendants repudiated the option agreement and refused to perform.

On the other hand the defendants deny that the plaintiffs were willing and able to pay the purchase price and they allege that plaintiffs demanded an extension of ninety days within which to raise the money. In addition defendants allege that plaintiffs by their previous actions had misled them into believing that plaintiffs had released their rights to the option to purchase, that in reliance on certain representations by plaintiffs they expended sums of money in improving the property and that it would be inequitable to require specific performance. These are issues of fact which should be determined by the trial court on remand.

Where there is a good faith dispute over the facts the parties must be afforded a trial at which the evidence can be presented and the live facts determined. It is only when there is no genuine issue as to a material fact that the moving party is entitled to judgment as a matter of law. (See K. S. A. 60-256 [c] and case annotations appearing in the 1975 supplement.) When a motion for summary judgment is overruled and a trial is necessary K. S. A. 60-256 (d) strongly suggests that the trial court should make an order specifying the facts and matters in substantial controversy and directing further proceedings. Facts not in controversy should be specified and thereafter they should be deemed established. On remand of this case the suggestions contained in this statute should be followed.

There are two other matters on which the trial court placed some weight in entering summary judgment in favor of defendants. They

should be mentioned to aid the court on remand of the case for trial.

The first concerns an affidavit executed and delivered to the Seneca National Bank of Wichita for the purpose of clearing title to the real estate in question. It was made in April, 1972, after the various agreements between Loose and Brubacher had become operative. The affidavit was executed by Mr. and Mrs. Loose for the express purpose of inducing the Seneca National Bank to release its liens and claims against the property so that the Brubachers would have merchantable title. It assured the bank that the sale agreement to the Brubachers covered the entire agreement between the parties and that in the future no further consideration would pass to the Looses. This affidavit appears to have been made for the benefit of the Brubachers so they might obtain merchantable title to this land. There is nothing in the affidavit which purports to release option rights. If there were misrepresentations of fact they were directed to the bank not to the Brubachers and it is the bank which may have been mislead. The Brubachers had equal knowledge of the prior transactions with Mr. and Mrs. Loose and they accepted the benefits accruing from the bank's release of any further lien or claim. Reading the affidavit in light of the pleaded facts it is difficult to see how the execution of the affidavit would constitute a waiver or relinquishment of rights under the option agreement or support a summary judgment.

The second matter considered by the court in entering summary judgment was the failure of Frank E. Loose to list the option agreement as an asset after he filed a petition in bankruptcy.

It does not appear that the bankruptcy of plaintiffs was mentioned in the pleadings and we fail to see the significance of this as an issue in this case. The question of plaintiffs' bankruptcy was first mentioned in defendants' interrogatories. In plaintiffs' answers to interrogatories it was stated that a petition in bankruptcy was filed by Frank E. Loose August 17, 1972, and that the option to purchase was not listed as an asset on advice of plaintiffs' bankruptcy counsel. Regardless of the soundness of that advice, under the facts of this particular case we fail to see how a failure to list would justify a summary judgment in this case. If the option agreement is an asset which appellants were bound to list in bankruptcy, they may have defrauded creditors by failing to include it in their bankruptcy action, but it is quite a different thing to say that they waived their rights to exercise the option

because they failed to list it as an asset. No evidence was presented in the lower court regarding this issue and no cases in point are provided by the parties in their briefs on appeal. The failure of a bankrupt to list a claim of an interest in land in his bankruptcy schedule does not necessarily estop him from asserting the claim after his discharge, particularly where the omission was not due to intent to conceal or other fraudulent motive. (*McAulton v. Smart,* 54 Hawaii 488, 510 P. 2d 93; 9 Am. Jur. 2d, Bankruptcy, § 860, p. 642.)

Accordingly we reverse the order granting summary judgment and remand the case for further proceedings in accordance with the views expressed herein.

SCHROEDER, J., dissenting.

In my opinion the clear wording of the option contract required tender of payment and notice of intent to exercise the option prior to September 1, 1973. The option contract reads in part: "Brubacher does hereby give and grant to Loose an option to purchase said above-described real estate *for the sum of $23,000 on or before the 1st day of September, 1973.*" (Emphasis added.)

The above phrasing of the conditions precedent cannot be rearranged in the contract for the simple expedience of reaching a contrary conclusion.

The contract further specified that Loose pay to Brubacher, in addition to the sum of $23,000.00 the sum of $53.33 per month from the time Brubacher obtains merchantable title until exercise of the option. This is not an additional sum which is subject to negotiation. The amount is definitely ascertainable and fixed by the contract. It must be paid with and in addition to the $23,000.00. *When title to this real property became merchantable is a fact known to both Loose and Brubacher, who were the parties (vendor and vendee) to the contract of sale and conveyance involving the specific tract of real property covered by the option contract.*

It is respectfully submitted the judgment of the trial court should be affirmed.