**INTERNATIONAL POWER MACHINERY, INC.,**
Plaintiff,

v.

**MIDWEST ENERGY, INC., Defendant.**

No. Civ.A. 97–2323–EEO.

United States District Court,
D. Kansas.

May 19, 1998.

Phillip P. Ashley, Williamson & Cubbison, Kansas City, KS, Philip J. Weaver, R. Eric Smearman, Smith, Marshall, Weaver & Vergon, Cleveland, OH, for Plaintiff.

Brock R. McPherson, McPherson & McVey Law Offices, Chtd., Great Bend, KS, James D. Griffin, Blackwell, Sanders, Matheny, Weary & Lombardi L.L.P., Overland Park, KS, for Defendant.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on plaintiff's motion for partial summary judgment (Doc. # 26) and defendant's motion for summary judgment (Doc. # 25). As an initial matter, defendant's request for oral argument will be denied because the court has determined that oral argument will not be of material assistance in resolving the motion. After careful consideration of the parties' briefs, the court is prepared to rule. For the reasons set forth below, plaintiff's motion will be granted and defendant's motion will be denied.

### Factual Background

For purposes of defendant's motion, the following is a brief summary of the material facts that are uncontroverted or deemed admitted pursuant to Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1.

In 1993, Defendant Midwest Energy, Inc. ("Midwest Energy") contacted plaintiff International Power Machinery, Inc. ("International Power") regarding the sale of certain generator units to International Power. After some negotiation, Midwest Energy granted an option to International Power through February 1994 for the sale of a 9375 KVA Westinghouse Turbine Generator Unit # 2 for $10,000, located in Hays, Kansas. Midwest Energy granted International Power several extensions of the option up to and including June 3, 1994. On May 16, 1994, International Power sent a letter by facsimile to Midwest Energy which provided:

We hereby exercise our option/first priority to purchase your 9375 KVA Westinghouse steam turbine generator unit no. 2 at Hays, Kansas at price of $10,000. As is

where is, asbestos free, with all auxiliaries and spare parts including switchgear, generator and condenser for the turbine—removal at no expense to Midwest Energy.

On June 20, 1994, Midwest Energy sent International Power a proposed written contract setting forth the specific terms and conditions of the purchase contract between the parties. On June 24, International Power advised Midwest Energy that it received the proposed contract and that International Power's legal department would study the contract. On June 28, Midwest Energy, through its attorney, sent International Power a letter indicating that as of that date no payment had been made to Midwest Energy to complete the terms of any possible contract between the parties, and as a result, Midwest Energy believed it had no further obligation to International Power concerning the generator. Midwest Energy explained that it believed International Power had failed to comply with the terms of its own option to purchase and therefore was in default under any supposed contract. Nevertheless, Midwest Energy stated that International Power had until July 6, 1994, to execute the proposed contract and return it to Midwest Energy. On January 30, 1995, Midwest Energy sold the generator to a third party.

### Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. 2505.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 56.1.

*Analysis*

## I. International Power Exercised Its Option To Purchase The Generator Prior To Midwest Energy's Revocation Of The Option.

■ The basic legal principles of contract formation are well established. "In order to form a binding contract, there must be a meeting of the minds on all essential terms." *Albers v. Nelson,* 248 Kan. 575, 580, 809 P.2d 1194, 1198 (1991); *see Sidwell Oil & Gas Co. Inc. v. Loyd,* 230 Kan. 77, 79, 630 P.2d 1107, 1110 (1981). "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract." *Id.* at 84, 630 P.2d at 1113 (quoting *Steele v. Harrison,* 220 Kan. 422, 428, 552 P.2d 957, 962 (1976)).

International Power argues that an enforceable contract was created on May 16, 1994, when it exercised its option and promised to purchase the generator in accordance with the terms offered by Midwest Energy. On the other hand, Midwest Energy argues that no enforceable contract was created on May 16, 1994, because International Power did not give any consideration to Midwest Energy for exercising the option. For the reasons stated below, the court agrees with International Power's position.

■ An option contract unsupported by consideration is merely an offer to sell which may be revoked at any time prior to its acceptance. *See Berryman v. Kmoch,* 221 Kan. 304, 306, 559 P.2d 790, 793 (1977). An option unsupported by initial consideration, however, becomes a binding contract if accepted prior to its revocation. *See Talbott v. Nibert,* 167 Kan. 138, 144, 206 P.2d 131, 136 (1949). The option at issue here does not specify any particular method of acceptance. In such circumstances, no particular form or notice of acceptance is required. *See Reger v. Sours,* 181 Kan. 423, 427, 311 P.2d 996, 999 (1957). "All that is required is that the [option]ee notify the [option]or prior to the date of the expiration of the option of his

decision to exercise it" in accordance with its terms. *Id.; see Loose v. Brubacher,* 219 Kan. 727, 734, 549 P.2d 991, 997 (1976).

■ Here, International Power's May 16, 1994 letter to Midwest Energy tracks the terms of the option virtually verbatim and evidences International Power's agreement to all essential terms of the contract. Midwest Energy does not contend that International Power attempted to alter the terms of the option. Midwest Energy argues, however, that International Power's exercise of the option was invalid because Midwest Energy did not receive any monies when International Power attempted to exercise its option. The option granted to International Power did not specify when payment to Midwest Energy was to be made. The Kansas Supreme Court has held that "[p]ayment or tender of the contract price is not essential to acceptance unless the option agreement makes it a condition precedent to or a part of or necessary to the exercise of the option. In such a case payment may be made within a reasonable time after acceptance." *Loose,* 219 Kan. at 732, 549 P.2d at 996 (citations omitted). Numerous other courts have reached the same result. *See, e.g., Forest Properties Inc. v. United States,* 39 Fed.Cl. 56, 69 (1997); *Agristor Leasing v. Storley,* 725 F.Supp. 472, 473–74 (D.S.D.1989); *Erich v. Granoff,* 109 Cal.App.3d 920, 167 Cal.Rptr. 538, 542–43 (1980); *Littlefield v. Brown,* 394 A.2d 794, 796 (Me.1978); *Doolittle v. Fruehauf Corp.,* 332 So.2d 107, 109 (Fla.Ct.App. 1976). Applying the above legal principles, Midwest Energy received consideration from International Power at the time International Power exercised its option. At that time, Midwest Energy received International Power's promise to purchase the generator. Accordingly, a binding executory contract for purchase and sale between the parties was created.[1] Based on the factual record before the court, no reasonable jury could find otherwise.

## II. International Power's Performance Under The Contract Was Required Within A Reasonable Time.

■ Both parties agree that a reasonable time for completion of a contract will be implied when a contract, which establishes the parties' agreement on other essential terms, does not specify the time for performance or the performance of a necessary event. *See Arnold v. S.J.L. of Kansas Corp.,* 249 Kan. 746, 749–50, 822 P.2d 64, 67–68 (1991); *Loose,* 219 Kan. at 732, 549 P.2d at 996; *see also Care Display, Inc. v. Didde-Glaser, Inc.,* 225 Kan. 232, 236, 589 P.2d 599, 604 (1979) (quoting *Storts v. Martin K. Eby Constr. Co.,* 217 Kan. 34, Syl. ¶ 2, 535 P.2d 908, 909 (1975)) ("Two persons may fully agree upon the terms of a contract, knowing that there are other matters on which they have not agreed and on which they expect further negotiation. Such an expectation does not prevent the agreement already made from being an enforceable contract."). Midwest Energy argues that, assuming a valid contract existed between the parties, there is no issue of material fact that International Power failed to comply with the contract within a reasonable time. The Kansas Supreme Court has held that a "reasonable time [for performance of a contract] is usually a question of fact to be determined by the jury." *Arnold,* 249 Kan. at 750, 822 P.2d at 67 (citing *Rymph v. Derby Oil Co.,* 211 Kan. 414, 418, 507 P.2d 308, 312 (1973)). Neither party has presented evidence as to what is a reasonable amount of time for performance for the purchase of a turbine generator unit or similar machine. Based on the bare factual record, the court cannot conclude as a matter of law that International Power failed to perform under the contract within a reasonable amount of time. Accordingly, defendant's motion for summary judgment on this issue will be denied.

IT IS THEREFORE ORDERED that plaintiff's motion for partial summary judgment (Doc. # 26) is granted.

---

1. International Power also argues that a valid contract existed because International Power accepted a "firm offer" within the meaning of the Uniform Commercial Code. Midwest Energy disputes the application of the Uniform Commercial Code to the facts of this case. We need not reach the issue given our ruling above that a valid contract existed under general principles of contract law.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Doc. # 25) is denied.